| | |
|---|---|
| **DISTRICT COURT**<br>**JEFFERSON COUNTY, COLORADO**<br>100 Jefferson County Parkway<br>Golden, CO 80401 | DATE FILED: November 1, 2019 11:10 PM<br>FILING ID: E83324F595996<br>CASE NUMBER: 2019CV31654 |
| **Plaintiff: A.C., as Parent and Next Friend of Minor S.T.C.**<br><br>v.<br><br>**Defendants: JEFFERSON COUNTY R-1 SCHOOL DISTRICT**, **Jeff Gomez**, individually; **William Carlin**, individually; and **Jason E. Glass**, individually. | ▲COURT USE ONLY▲<br><br>Case No.<br><br>Division: |
| Edward Milo Schwab, #47897<br>Ascend Counsel, LLC<br>3000 Lawrence Street<br>Denver, CO 80205<br>(303) 888-4407<br>milo@ascendcounsel.co | |
| **COMPLAINT** | |

Plaintiffs A.C. and S.T.C, by their undersigned counsel, complains against Defendants Jefferson School District, Jeff Gomez, William Carlin, and Jason E. Glass as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the subject matter of this action pursuant to C.R.S. Const. art. VI, § 9(1), and over the parties pursuant to C.R.S. § 13-1-124(1)(a) and (b), because this action arises from the actions and torts committed within the State of Colorado, by residents of the State of Colorado.

1

2. Pursuant to C.R.C.P. 98(c), venue is proper in the District Court in and for Jefferson County because the subject conduct and a substantial portion of the alleged torts were committed therein.

## PARTIES

3. Plaintiff A.C., the parent, and natural guardian of Plaintiff S.T.C., a minor child, brings this action in her representative capacity as next friends on behalf of S.T.C. A.C. has at all relevant times resided in Jefferson County, Colorado.

4. Plaintiff S.T.C. is currently 16 years old and at all relevant times has resided with her parents in Jefferson County, Colorado. Plaintiffs are identified by their initials to protect S.T.C.'s privacy in light of the sensitive nature of the subject matter of this Complaint. Other minor students will be identified by aliases as well. The identities of A.C. and S.T.C. are well known to the Defendants.

5. Defendant Jefferson County R-1 School District is a provider of public education under Colorado law. The district is a resident of Jefferson County. Jefferson County R-A School District receives federal funding.

6. The individual Defendants are residents of Colorado and all were District employees at all relevant times.

## FACTUAL ALLEGATIONS

7. During the 2016-2017 and 2017-2018 school years, S.T.C. was a student enrolled in Everitt Middle School ("Everitt"), a school in the Jefferson County R-1 School District.

8. S.T.C. has been diagnosed with P.T.S.D., severe anxiety, and panic attack syndrome. Through her time within the Jefferson school district, each school administration and

school nurse were made aware of these conditions and plans were, to varying degrees, developed to address these conditions.

9. While at Everitt, S.T.C. was never provided an Individualized Education Program (IEP) or a 504 plan.

10. When S.T.C. first enrolled at Everitt in the fall of 2015 as a sixth-grader, she, along with the other students in her grade were informed by older students, during something of an informal orientation, that on Tuesdays, boys would touch girls' breasts in the hallways, something that was widely known as "Titty Touch Tuesdays." These young students were also informed that on Fridays, boys would touch girls' buttocks in the hallways, something that was widely known as "Slap Ass Fridays."

11. This culture of sexual harassment and assault dates back at least to 2010.

12. This conduct had generated complaints to the school administration, the police, and the Jefferson County District Attorney's office, but the school was and continues to be indifferent to this culture, the signals this gives the male students and the effects it has on its female students.

13. Throughout the 2016-2017 school year, S.T.C was sexually harassed and assaulted in the hallways and classrooms of Everitt Middle School as well as off-campus over sixty times by two male classmates.

14. Some assaults were limited to groping in the hallways, while other included actions such as holding her against the wall or locker, putting their hands up her shirt and inside her bra, putting their hands inside her pants, under her underwear, and touching her vagina, and inside the vaginal lips, laughing and continuing when she said no and cried.

3

15. Because of the culture the school administration had knowingly allowed to develop and persist, S.T.C. either believed that this was normal or that another complaint would do no more good than past complaints.

16. On May 15, 2017, A.C. learned the sexual assaults perpetrated on S.T.C.

17. A.C. immediately contacted the school and left a message for Mr. Gomez, the principal at Everitt Middle School, leaving a message to tell him that her daughter had been sexually harassed and assaulted many times on school grounds.

18. Later that evening, A.C. received a phone call from Mr. Carlin during which A.C. reported the sexual harassment and assault S.T.C. had endured. Mr. Carlin and A.C. agreed to meet the following morning.

19. Fearing that the school would not take action, A.C. that evening decided to report these sexual assaults to the Wheat Ridge Police.

20. The next morning, A.C. accompanied S.T.C. to Everitt to speak with Mr. Gomez.

21. Being told that Mr. Gomez was not available, A.C. instead spoke with Mr. Carlin, the Vice Principal at Everitt Middle School.

22. A.C. and S.T.C. told Mr. Carlin about the series of sexual assaults that had occurred both on and off school grounds. Mr. Carlin told them that events off school grounds were not of concern to him.

23. More troubling, Mr. Carlin did not take this seriously. At one point, he turned to S.T.C. and said: "boys do that to show you that they like you."

24. Although Mr. Carlin had S.T.C. fill out an incident report, he did not express alarm or concern over the conduct occurring in the school and did not express much interest in investigating or pursuing this matter.

25. As the last day of school was only a week later, S.T.C. was expecting to take final exams. Up to this point, S.T.C. had been a straight-A student with several placements in honors courses.

26. Because S.T.C. was in many of the same classes as Student 1 and Student 2, the two boys that had sexually harassed and assaulted her all year, the school determined that S.T.C. should be held out of class for the final days of the year to avoid conflict.

27. Owing to this, S.T.C. was unable to take finals and was given incompletes for the year.

28. A.C. inquired as to why S.T.C. was being punished for coming forward. The administration responded that it was easier to disrupt and hold S.T.C. out of finals than to hold the two boys out of finals.

29. This action, of punishing S.T.C. for bringing forward complaints of sexual assault and harassment, was to become a pattern.

30. Over the summer, Student 1 and Student 2 began to harass S.T.C. for having reported them to Mr. Carlin and the school administration.

31. This led S.T.C. to self-harm behaviors including cutting herself and became suicidal.

32. S.T.C.'s suicidal thoughts and depression were because the school did not believe her or did not believe that the sexual harassment and assault against her were something worth reacting to.

33. A.C. and S.T.C. asked the police for a restraining order, but for reasons unknown to them at the time, the police were unable to provide one and were struggling with their investigation.

34. A.C. would later learn that the school and Mr. Carlin were refusing requests from the police for any evidence, reports, statements, and any other documents generated from his investigation.

35. Because Mr. Carlin and the school district were refusing to provide these documents, the Wheat Ridge Police could not institute a restraining order until the fall of 2017.

36. By October 27, 2017, the Wheat Ridge Police were so frustrated with the school's stonewalling that it drafted a citation against Everitt Middle School for Obstruction of a Police Officer.

37. When the school's investigation file was finally provided to the Wheat Ridge Police, they discovered that Mr. Carlin had statements from both Student 1 and Student 2 from May of 2017, with confessions by each, including one confession stating that their conduct was nonconsensual.

38. Nonetheless, Mr. Carlin and the school district sat on this information, placing S.T.C. at risk of harm and preventing the police from further investigating the incident and conduct at the school.

39. According to the police and the Jefferson County District Attorney's office, this was not the first time the school had withheld information or otherwise made investigations into assaults, including sexual assaults, more difficult.

40. During this same time period, the police and district attorney's office initiated a discussion with the Jefferson County School District's Title IX investigator.

41. Shockingly, the Title IX investigator blew off this as an issue, telling Reyna Johnson of the Wheat Ridge Police Department: "what's the big deal, it's just a butt slap."

42. Apparently, the Title IX investigator simultaneously was not aware of the severity of the many assaults but also lacked awareness that a "butt slap" is also a sexual assault and a violation of a student's Title IX rights as well as other civil rights.

43. When an Assistant District Attorney heard about the "Titty Touch Tuesday" and "Slap Ass Friday," she said: "that's still happening? I told the school administration about this years ago and told them they needed to stop this sexual assault on their campus." Apparently, in previous years, it was called "Tittie Tug Tuesdays."

44. In July, prior to the commencement of the school year, S.T.C. received her schedule for the upcoming year.

45. She quickly realized that her entire schedule was with these two boys who had sexually harassed and assaulted her the entire previous year.

46. This led to a massive anxiety attack for S.T.C., which led to more cutting.

47. Apparently, the school had thought so little of these incidents that no effort was taken to ensure the safety of S.T.C.

48. When this scheduling issue was brought to the school's attention, the school responded first by removing S.T.C. from honors classes, art classes, and other classes that she shared with Student 1 or Student 2.

49. In each instance, S.T.C. was deprived of educational opportunities and placed in lower performing classes.

50. The two males who had committed the sexual assaults that necessitated a change of schedule were permitted to stay in their classes to reduce disruption to their lives and schedules.

51. Again, A.C. protested and asked why S.T.C. was losing opportunities for coming forward.

52. The school, the administration, and the leadership at Everitt stuck with depriving S.T.C. of educational benefits and opportunities, instead granting those opportunities to those that assaulted S.T.C.

53. Throughout the fall, Student 1, Student 2, and several of their friends began a physical and verbal harassment campaign against S.T.C.

54. S.T.C. was thrown into lockers between classes, called a slut, a whore, and accused of telling lies to accuse the two boys of rape.

55. A.C. and S.T.C. reported these assaults to the school administration, but these allegations were never investigated. Further, S.T.C. was nor protected by the school against this sexual harassment.

56. At one point, S.T.C. decided to start telling other students about her assaults. The fall of 2017 was the beginning of the Me Too movement and S.T.C. was feeling more supported and wanted to tell her story.

57. Mr. Gomez told S.T.C. not to talk about her assaults. He said: "don't talk to anyone about this. No one needs to know anything."

58. As the year progressed, the boys were removed from the school owing to the restraining order and subsequently plead guilty to crimes for their sexual assaults of S.T.C.

59. Nonetheless, friends of Student 1 and Student 2 continued their campaign of assault and harassment.

60. A.C. and S.T.C. continued to lodge complaints with the school, Mr. Gomez, and Mr. Carlin, often on a weekly basis.

61. Nonetheless, the school and its leadership was indifferent.

62. Eventually, even going to non-honors classes was too much for S.T.C. She would still encounter these students in the hallway where they would assault her with impunity.

63. S.T.C. first stopped going to first period, then second, and soon was doing all of her course work in an administrative office.

64. The school apparently found it more convenient to hold S.T.C. out of class than to remedy the retaliation of students for her bravery in confronting sexual harassment.

65. As a result of not being in class and being forced to take science classes online, S.T.C.'s grades slipped to the point that A.C. views the entire year as lost.

66. As a result of the school's lack of protection and indifference to S.T.C.'s basic needs, S.T.C. was eventually pulled out of the Jefferson County School district.

## CLAIM I
### TITLE IX, 20 U.S.C. 1681(A) *ET SEQ.*
### (JEFFERSON COUNTY R-1 SCHOOL DISTRICT)

67. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

68. The sexual harassment and abuse of S.T.C was so severe, pervasive, and objectively offensive that it could be said to deprive S.T.C. of access to the educational opportunities or benefits provided by Jefferson County R-1 School District.

69. Responsible persons within the Jefferson County R-1 School District had actual knowledge of conduct by students that constituted sexual harassment and assault of S.T.C. and which amounted to a culture whereby female students were sexually harassed and sexually assaulted on school grounds which created a permissive culture that created the conditions for additional actions of sexual harassment and assault.

70. The Jefferson County R-1 School District was deliberately indifferent to the sexual harassment and abuse of S.T.C., without limitation, on the following:
    a. The Jefferson County R-1 School District's failure to appropriately train its responsible employees regarding how to respond to sexual harassment and assault.
    b. The Jefferson County R-1 School District policy of ignoring the history and culture of sexual harassment and abuse in its schools.

71. The Jefferson County R-1 School District intentionally chose to place the costs of S.T.C.'s coming forward on her. She was blamed as the victim and made to bear the costs of coming forward while the sexual aggressors were protected by the school and allowed to continue with their schedules.

72. Jefferson County R-1 School District subjected S.T.C. to gender-based discrimination which was so severe, pervasive, and objectively offensive that she was denied access to educational opportunities and denied benefits provided by the school.

73. Jefferson County R-1 School District decided to shelter and harbor the male students who sexually assaulted S.T.C and failed to take action despite having confirmed in its investigation that Student 1 and Student 2 had forced S.T.C. into non-consensual sexual acts and continued to harass S.T.C. after the incident became public.

74. The Jefferson County R-1 School District actively and intentionally worked to stymie criminal investigations, withholding important protections from S.T.C. including protection and restraining orders.

75. As a direct and proximate result of Jefferson County R-1 School District's deliberate indifference, S.T.C. was subjected to repeated bullying, intimidation, and harassment at Everitt.

76. The intimidation, harassment, physical assault, and bullying resulted in S.T.C. suffering severe, significant, and ongoing emotional distress and anguish.

77. S.T.C. continues to suffer from depression, anxiety, and emotional distress regarding her treatment by classmates and the manner in which they were shielded by leaders in the school.

## CLAIM II

### FOURTEENTH AMENDMENT, 42 U.S.C. §1983
### (ALL DEFENDANTS)

78. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

79. S.T.C. has been subjected to a deprivation of clearly established, constitutionally protected rights, privileges secured by the Constitution of the United States, including:

    a. Her 14th Amendment due process right to liberty, including the right to personal

security and bodily integrity and the right to be free from fear, harm, and sexual assault in her person in her school;

b. Her 14th Amendment right to equal protection due to intentional discrimination against S.T.C. on the basis of her gender or sex, and as a member of a protected class, persons who are disabled;

c. Deliberate indifference to sexual harassment and assault and to physical assault.

80. The foregoing were clearly established at the time of the violations.

81. The deprivations were caused by the customs, policies, and established and tolerated practices of the Jefferson County R-1 School District, and were the result of decisions by official decision makers for the School District, acting under color of state law, including, without limitation:

a. The failure to train Jeffco Public Schools personnel regarding how to recognize signs of sexual abuse and how to investigate and how to address allegations of sexual abuse;

b. The failure to train Jeffco Public Schools personnel regarding how to recognize the signs of sexual abuse of a special needs minor and how to investigate and how to address allegations of sexual abuse involving a special needs minor;

c. The Jeffco Public Schools practice of allowing sexual harassment and assault in its hallways, in spite of actual knowledge of a culture that permits and supports such assaults.

d. The established practice of the School District's Title IX coordinator in failing to investigate detailed allegations of sexual abuse.

    e. The Jeffco School District's established custom and practice of failing to enforce its own policies and procedures regarding sexual harassment and bullying.

    f. The Jeffco School District's established policy of forcing victims of sexual harassment and sexual assault to be taken out of class and to treat male students preferentially to female students.

82. The foregoing violations of S.T.C.'s constitutional rights have caused substantial damages to S.T.C., including, without limitation, severe and significant psychological damage, physical harm, and emotional distress.

### CLAIM III
### Section 504 of the Rehabilitation Act of 1973/Americans with Disabilities Act of 1900, 42 U.S.C. 12101, *et seq*
### (Jefferson County R-1 School District)

83. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

84. At all relevant times, S.T.C. was a handicapped and disabled individual within the meaning of the Rehabilitation Act and the Americans with Disabilities Act, which prohibit exclusion from participation from school programs, denial of benefits, or being subjected to discrimination on the basis of disability.

85. S.T.C. has a mental impairment that limits one or more of her major life activities, has a record of such impairment, and is regarded as having such impairment under the law.

86. At all relevant times, S.T.C. was and is otherwise qualified to participate in the general education program of the Jefferson County R-1 School District, which accepts federal funding and is subject to the Rehabilitation Act and the Americans with Disabilities Act.

87. The Jefferson County R-1 School District violated S.T.C.'s rights under the Rehabilitation Act and the Americans with Disabilities Act.

88. Jefferson County R-1 School District's conduct was discrimination solely on the basis of S.T.C.'s handicap.

89. S.T.C. continues to suffer from depression, anxiety, and emotional distress regarding her treatment by classmates and the manner in which they were shielded by leaders in the school.

WHEREFORE, Plaintiffs A.C. and S.T.C. respectfully request that this Court enter judgment in its favor and against the Defendants as follows:

(i)   Compensatory damages;
(ii)  Exemplary damages;
(iii) Punitive damages;
(iv)  Pre and Post-Judgment Interest;
(v)   Reasonable Attorney Fees and costs; and
(vi)  Any other relief the Court deems appropriate.

Respectfully submitted this 1st day of November 2019.

s/ Edward Milo Schwab
Edward Milo Schwab, #47897
Ascend Counsel, LLC
3000 Lawrence Street
Denver, CO 80205
(303) 888-4407
milo@ascendcounsel.co

ATTORNEY FOR PLAINTIFF