IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00078-CMA-SKC

**Plaintiff:**
A.C. as Parent and Next Friend of Minor S.T.C.,

**v.**

**Defendants:**
JEFFERSON COUNTY R1 SCHOOL DISTRICT, JEFF GOMEZ, individually, and
WILLIAM CARLIN, individually.

---

## DEFENDANTS' PARTIAL MOTION TO DISMISS

---

Defendants Jefferson County R-1 School District,[1] Jeff Gomez, and William Carlin (collectively, the "School District"), by undersigned counsel, move pursuant to Fed. R. Civ. P. 12(b)(6) for dismissal of all claims except Claim III (Claims I-II and IV-VIII) of Plaintiff's Third Amended Complaint ("Complaint") (ECF No. 29). In support, the School District states as follows:

## CERTIFICATION

Pursuant to CMA Civ. Practice Standard 7.1D, the undersigned certifies that she conferred with Plaintiff's counsel by telephone and email on April 6 and April 13, 2020 about the ground for dismissal. This Motion is opposed.

## FACTS PLED BY PLAINTIFF

For purposes of this Motion to Dismiss only, the School District must accept the relevant factual allegations in ECF No. 29 as true.

---

[1] The School District is incorrectly identified in the Complaint as Jefferson County R1 School District. The proper name is Jefferson County School District R-1.

STC enrolled at Everitt Middle School ("Everitt") in the fall of 2015.  ECF No. 29, ¶ 9. When she enrolled, unnamed students told her that on Tuesdays, boys would touch girls' breasts in the hallways and on Fridays, boys would touch girls' buttocks in the hallways.  *Id.*  Students referred to these days as Titty Touch Tuesdays ("TTT") and Slap Ass Fridays ("SAF").  *Id.* Sometime after "at least" 2010, unnamed "former students" reported "TTT" and "SAF" to unknown teachers, unknown guidance counselors, Jeff Gomez (former Everitt Principal), Tim Carlin (former Everitt Assistant Principal), and other unidentified school officials.  *Id.* at ¶¶ 10-11. An unnamed Assistant District Attorney also told "them" "years ago" about "TTT." *Id.* at ¶ 47. Plaintiff does not allege Mr. Carlin and Mr. Gomez were administrators at Everitt "going back to 2010." Mr. Carlin and Mr. Gomez failed to address "TTT" and "SAF" by training teachers and staff about their obligation to supervise students in the hallways and to protect students from harassment and assault.  *Id.* at ¶ 14, 135. They also failed to implement policies to prevent "TTT" and "SAF."  *Id.* at ¶ 14. Plaintiff does not allege that STC ever reported to school officials that she was sexually assaulted on "TTT" and "SAF" or that she suffered an educational deprivation because of "TTT" and "SAF."

Throughout the 2015-2017 school years, STC was sexually harassed and assaulted by two boys (Student 1 and Student 2).  *Id.* at ¶¶ 15-17. The incidents took place both on and off school grounds.  *Id.* at ¶ 16. Unidentified teachers witnessed some incidents but did not intervene. *Id.* It is unknown whether any incidents were ever reported by teachers. *Id.* ¶ 15. The two boys' sexual harassment of STC was not reported to school officials until May 15, 2017.

On May 15, 2017, STC's mother learned that STC was being sexually harassed and assaulted by Students 1 and 2. *Id.* at ¶ 19. AC immediately called Mr. Gomez and left a voicemail to report the harassment and assault. *Id.* ¶¶ 19-20.  Mr. Carlin returned AC's call the same day and scheduled a meeting for the following morning.  *Id.* at ¶ 21. That evening, AC and STC also filed a report with the Wheat Ridge Police Department. *Id.* at ¶ 22.  The police initiated a criminal investigation into the allegations against Student 1 and Student 2. *Id.* at ¶¶ 38-39. The criminal investigation continued into the fall of 2017. *Id.* at ¶ 65.

On May 16, 2017, as previously arranged, Mr. Carlin met with AC and STC.  *Id.* at ¶¶ 21, 24.  AC and STC told Mr. Carlin about incidents that took place both on and off school grounds.  *Id.* at ¶ 24.  Mr. Carlin told AC and STC that he was not concerned with alleged off-campus incidents. *Id.* at ¶ 25. Mr. Carlin investigated STC's allegations. *Id.* at ¶ 27, 32, and *see also* ¶¶ 38-39, and 41 (alleging Mr. Carlin had an investigation file). He had STC fill out an incident report and he obtained written statements from Students 1 and 2. *Id.* STC was removed from class for the final days of the 2016-2017 school year to avoid conflict. *Id.* at ¶ 29.  As a result, STC was unable to take finals.  *Id.* at ¶ 30.  She was given incompletes for the year. *Id.*

Over the summer, Students 1 and 2 harassed STC for reporting sexual harassment. *Id.* at ¶ 34.  AC and STC asked the police for a restraining order. *Id.* at 37. The police were unable to provide one until the fall of 2017 because Mr. Carlin and the School District refused to provide the police with documents from the School District investigation.  *Id.* at ¶ 38-39.

In July 2017, STC received her class schedule for the 2017-2018 school year.  *Id.* at ¶ 48. Somehow, STC learned she was scheduled to attend classes with Students 1 and 2.  *Id.* at ¶ 49.  When her schedule was brought to the school's attention, STC was removed from classes she shared with Students 1 and 2.  *Id.* at ¶ 52.

While the criminal investigation into STC's allegations was ongoing, STC decided to tell other students about the harassment by Student 1 and 2. *Id.* at ¶ 61, 65 (alleging the police investigation did not conclude until later in the 2017-18 school year). On several occasions, Mr. Gomez told STC not to talk about the sexual harassment.  *Id.* at ¶ 62.

In the fall of 2017, Students 1 and 2, and their friends began a physical and verbal harassment campaign against STC. *Id.* at ¶¶ 58-59. AC and STC reported the harassment to Mr. Carlin and Mr. Gomez. *Id.* at ¶¶ 60, 64, and 67. Some of the complaints were not investigated, students were not appropriately punished, and unsatisfactory remedial action was taken. *Id.* at ¶¶ 60, 67. Students 1 and 2 were eventually removed from school. *Id.* at ¶ 65. Even after Students 1 and 2 were removed, STC continued to experience harassment by their friends.  *Id.* at ¶ 66.  Eventually, STC stopped going to class, was forced to take her science class online, her grades slipped, and she was pulled out of the School District.  *Id.* at ¶¶ 68-72.

## **LEGAL STANDARD**

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain enough allegations of fact, taken as true, 'to state a claim for relief that is plausible on its face.'" *Khalik v. United Air Lines*, 67 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'[P]lausibility' in this

context…refer[s] to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570); *see also Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir.2008). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft,* 556 U.S. at 678 (internal quotation marks omitted).  Consequently, on a 12(b)(6), the court must assess whether the plaintiff's complaint *alone* is legally sufficient to state a claim for which relief may be granted. *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (emphasis added). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Faircloth v. Schwartz*, 2014 WL 4466663 at *4 (D. Colo. Sept. 10, 2014) (citing *Iqbal,* 556 U.S. at 678).

## **ARGUMENT**

I.   **Claim I-Title IX School District Deliberate Indifference to "TTT" and "SAF"-STC fails to plead facts that show the School District was deliberately indifferent to "TTT" and "SAF."**

STC alleges the School District violated Title IX because it was deliberately indifferent to unspecified complaints made to unknown School District employees about "TTT" and "SAF." ECF No. 29, ¶¶ 9-14, 73-77. To state a deliberate indifference claim under Title IX, STC must show: (1) she was subjected to sexual harassment during "TTT" and "SAF" that deprived her of "access to the educational opportunities or benefits provided by the school; 2) a School District official was aware of the sexual harassment; and 3) the School District was deliberately indifferent to the harassment. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, at 650-51 (1999); *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290, (1998). STC has failed to plead facts that establish actual knowledge, educational deprivation, and deliberate indifference.

### A.     STC fails to plead actual knowledge and an educational deprivation.

To establish actual knowledge, STC must plead facts that show an "appropriate person" had actual (not constructive) knowledge of the alleged harassment. *Gebser*, 524 U.S. at 277. An appropriate person is defined as a school official who had the authority to institute corrective measures on the School District's behalf had actual knowledge of the conduct. *Id.*

### i.     STC does not allege she reported "TTT" or "SAF."

STC does not allege facts that show she reported harassment that happened on "TTT" or "SAF" or experienced an educational deprivation. STC claims that as a result of deliberate indifference to reports made by *other* students about "TTT" and "SAF," she was harassed by Students 1 and 2. ECF No. 29, ¶¶ 11, 15-18. AC and STC reported harassment by Students 1 and 2 to the School District on May 15, 2017 but do not

allege they ever reported any allegations about "TTT" and "SAF" to any school official either before or after May 15, 2017 or that "TTT" and "SAF" deprived STC of an educational benefit or opportunity. *Id.* at ¶¶ 15-17, 25.

### ii.   STC does not allege facts that plausibly show "former students" reported "TTT" or "SAF" to an "appropriate person."

STC does not plead facts that show the School District had actual knowledge of "TTT" or "SAF." STC alleges that unnamed "former students" at some unknown time but "dating back at least to 2010" reported harassment to unknown teachers, guidance counselors, Mr. Carlin, Mr. Gomez, and other unidentified "school officials." *Id.* at ¶ 11. STC also alleges "years ago" an Assistant District Attorney told "them" about "TTT." *Id.* at ¶ 47. A vague reference to "them" does not meet the pleading threshold for notice to an "appropriate person." There are no allegations that Mr. Carlin and Mr. Gomez were administrators at Everitt "going back to 2010."

STC's allegations are vague and conclusory; and therefore cannot support a reasonable inference of liability by Defendants. STC alleges merely that unspecified "complaints" were made on unknown dates to unknown school district employees, who may or not have been school officials. Put simply, STC does not allege who knew what when, an essential element to her claims. At best, complaints were made by unnamed "former students" who "came forward" in "recent months" but she fails to allege to whom they allegedly came forward, or what they reported. *Id.* at ¶ 11. Nor does STC allege whether the alleged complaints were made to a school district official with authority to institute corrective measures on the School District's behalf. Teachers and guidance

counselors are not "appropriate persons" as defined under *Gebser* and therefore do not impute knowledge to the School District.

Wholly conclusory allegations and rote recitations do not create a cause of action. *Ashcroft*, 556 U.S. at 678 (a pleading that only offers labels and conclusions or a formulaic recitation of the elements and lacks factual enhancement is insufficient). The Court is not required to accept them as true. *Bryson*, 534 F.3d at 1286 ("a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory").

### B.    Allegations of deliberate indifference are facially implausible.

It is facially implausible for the School District to be deliberately indifferent to harassment of which it was unaware. *See Rost v. Steamboat Springs RE–2 Sch. Dist.*, 511 F.3d 1114, 1121 (10th Cir.2008) ("We need not respond to Ms. Rost's argument that the district was deliberately indifferent in its response to the harassment prior to K.C.'s January 2003 disclosure as we have concluded that the district had no knowledge of the harassment until January 2003."). STC therefore cannot establish any of the three requisite elements of her deliberate indifference claim against the School District under Title IX, which is based on an alleged toxic culture of harassment before AC's May 2017 disclosure of harassment by two boys. Claim I should therefore be dismissed.

### II.    Claim II-Title IX School District's "Discriminatory Response" fails to state a claim upon which relief can be granted.

"Discriminatory response" is not a cognizable claim under Title IX.  Title IX allows for the private enforcement of a claim of gender-based discrimination against a recipient of

federal funds, when there is deliberate indifference by an official towards known acts of pervasive and severe sexual harassment.  *Gebser*, 524 U.S. at 286.  Title IX liability is limited to circumstances where the recipient's deliberate indifference caused its students to undergo or be exposed to harassment that occurred "under the operations of a funding recipient." *Davis,* 526 U.S. at 645 (internal quotes omitted).  Subsumed in a Title IX claim is the very premise that a defendant's deliberate indifference to known acts of pervasive sexual harassment was discriminatory on the basis of gender.

STC's Claim II alleging "discriminatory response" claim is premised on deliberate indifference to sexual harassment.  *See* ECF No. 29, ¶ 90.  It is duplicative of her Title IX deliberate indifference claims (Claims I and III) and should be dismissed.  *See Doe v. Brighton Sch. Dist. 27J,* No. 19-CV-0950-WJM-NRN, 2020 WL 1018232, at *13 (D. Colo. Mar. 2, 2020) (dismissing plaintiff's sex discrimination claim as duplicative of plaintiff's deliberate indifference to sexual harassment claim).

### III.   Claims IV and V-Section 1983 equal protection claims against all Defendants-STC fails to plead facts that show the School District's actions were discriminatory.

Claims IV and V allege Section 1983 equal protection violations based on gender discrimination and deliberate indifference to sexual harassment. Section 1983 of Title 42 of the United State Code provides:

> Every person who, under color of any statute, ordinance, custom, or usage of any State…, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law…

42 U.S.C. §1983.  Section 1983 creates only the right of action; it does not create any substantive rights, which must come from the Constitution or federal statute. *See Spielman v. Hildebrand*, 873 F.2d 1377 (1386 (10th Cir. 1989) ("Section 1983 does not provide a remedy if federal law does not create enforceable rights.").

The Fourteenth Amendment is not a license to the federal judiciary to displace state law through the creation of a body of general federal tort law.  *See Paul v. Davis*, 424 U.S. 693, 701 (1976).

A viable equal protection claim requires STC to first make a threshold showing that the School District's actions were discriminatory. *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018).  To establish the School District's actions were discriminatory, STC must plead facts that plausibly show the School District treated her differently from others who were similarly situated to her and outside of her protected class.  *Id; see also Barney v. Pulsipher,* 143 F.3d 1299, 1312 (10th Cir. 1998).  Individuals are "similarly situated" only if they are alike "in all relevant respects."  *Requena,* 893 F.3d at 1210; *see also Barney,* 143 F.3d at 1312.  Here, a similarly situated individual outside STC's protected class is a non-female Everitt student who complained about sexual harassment. ECF No. 29, ¶¶ 104-05 (alleging STC is a female that reported sexual harassment to Mr. Gomez and Mr. Carlin).

STC does not allege facts that show individuals similarly situated to her were treated differently.  Claim IV alleges she was discriminated on the basis of gender because after she reported sexual harassment: 1) she was held out of class the final week of the 2016-2017 school year and Students 1 and 2 were not; and 2) her 2017-2018 class

schedule was changed to remove her from classes she shared with Students 1 and 2. ECF No. 29, ¶¶ 29, 52.  Students 1 and 2 are not similarly situated individuals.  They are male students who were accused of – not who reported – sexual harassment. Different treatment of STC and Students 1 and 2 therefore does not show the School District's actions were discriminatory.

Claim V alleges the School District violated STC's equal protection rights by ignoring reports made by other students about "TTT" and "SAF."  *Id.* at ¶¶ 114-116.  STC fails to plausibly allege an equal protection violation for two reasons.  First, she fails to plausibly allege sufficient facts to show the School District had actual knowledge of "TTT" and "SAF."  *See Supra,* Argument, Section 1(A).  Even if she had, STC does not state facts that show the School District's failure to respond to reports of "TTT" and "SAF" was discriminatory. STC does not allege one group of students (i.e. females who reported "TTT" and "SAF") was treated differently than another (i.e. males who reported "TTT" and "SAF").  Rather, STC alleges the School District ignored—equally—all student complaints about "TTT" and "SAF."  *Id.* at ¶ 11; *see Schaefer v. Las Cruces Public School Dist.,* 716 F.Supp.2d 1052, 1075-75 (D.N.M. 2010) (finding facts did not give rise to a claim under the equal-protection clause because plaintiffs failed to allege the school district did not treat any student or group of students differently; the school district's inactions treated all students equally). Absent facts about similarly situated male students at Everitt who reported sexual harassment, STC cannot make the required showing that she was treated differently from "similarly situated individuals." STC's

Claims IV and V alleging equal protection violations are facially deficient and must be dismissed as to all defendants.

## IV.   Claim VI-Section 1983 substantive due process violation against all Defendants-STC fails to plead facts that establish a danger-creation claim.

STC alleges the School District violated her substantive due process rights because it did not provide its investigation file to Wheat Ridge Police Department ("WRPD"), without which the police were unable to issue a restraining order. ECF No. 29, ¶ 39. "As a general matter, ... a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Rost,* 511 F.3d at 1125 (10th Cir. 2008). There are two exceptions: the special-relationship doctrine and the danger creation theory. *Id.* at 1126. STC advances the danger creation theory against the School District; a "narrow exception that applies only when a state actor affirmatively acts to create or increase plaintiff's vulnerability to private violence." *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006) (internal quotations omitted); *see also Gray v. Univ. of Colorado Hosp. Auth*., 672 F.3d 909, 916 (10th Cir. 2012).

Under the danger creation theory, STC must demonstrate that (1) the School District created the danger or increased STC's vulnerability to the danger in some way; (2) STC was a member of a limited and specifically definable group; (3) the School District's conduct put STC at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) the School District acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking.   *Rost,* 511 F.3d at 1126.   A danger creation claim "necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger."   *Gray*, 672

F.3d at 916. STC does not plead facts that establish the first, third, fourth, fifth, or sixth elements of her danger creation claim.

### A. STC fails to plead facts that show the School District increased her vulnerability to the harassment over the summer or put her at risk of harm (first and third element).

On May 15, 2017, STC reported to WRPD that Students 1 and 2 sexually harassed her.  ECF No. 29, ¶ 22.  WRPD's investigation followed. *See Id.* at ¶ 65. STC alleges the School District's inaction – not affirmative conduct – placed her in danger. On that basis alone, her claim fails.  *See Gray,* 672 F.3d at 916-922 (discussing the history of 10th Circuit precedent requiring "affirmative conduct" by the state to establish a danger creation theory); *see also DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189 (1989); *Graham v. Indep. Sch. Dist. No. I-89*, 22 F.3d 991 (10th Cir. 1994) (dismissal for failure to show any affirmative actions by school district that created or increased danger to student shot and killed).  Equally fatal, STC does not allege a constitutional deprivation of "life, liberty, or property."  *See Gray,* 672 F.3d at 922.

STC does not allege the School District engaged in any affirmative conduct that prevented the police from issuing a restraining order. Nor does she allege increased danger for WRPD's failure to issue a restraining order. WRPD had independent access to STC and Students 1 and 2.  It is facially implausible to infer liability from the School District's alleged failure to turn over two written student statements even if the Court assumes the District's inaction prevented WRPD or STC from obtaining a restraining order.  STC fails to plausibly allege facts that show the School District put her in danger, or increased danger or risk of harm for her.

**B.     STC does not allege the risk was obvious or known or that the School District acted recklessly in conscious disregard of that risk (fourth and fifth elements).**

The Complaint is void of any fact that demonstrates the School District knew WRPD could not issue a restraining order without written statements from Students 1 and 2. Plaintiff alleges that after May 15, 2017, WRPD requested Mr. Carlin's investigation file. ECF No. 29, ¶ 38.  Plaintiff does not allege when they asked for the file or whether Mr. Carlin was told that without that information, WRPD could not obtain a restraining order. Plaintiff does not allege the School District had knowledge that STC sought a restraining order or experienced harassment that would necessitate a restraining order over the summer.  If Mr. Carlin did not know STC requested or needed a restraining order, he could not have acted recklessly in conscious disregard of the risk that she would experience harassment by Students 1 and 2 over the summer. STC has therefore failed to plead facts to establish the fourth and fifth elements of a danger creation theory.

**C.     Carlin's alleged refusal to share a student discipline investigation file with law enforcement does not meet the "shocks the conscience" standard.**

A substantive due process claim requires "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *See Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1223 (10th Cir. 2006).  To satisfy the "shocks the conscience" standard, STC must do more than show Mr. Carlin intentionally or recklessly caused injury to STC by abusing or misusing government power—she must plead facts that show "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."  *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th

Cir. 1995) (decision to eliminate special unit of mental hospital for criminally insane did not shock the conscious even though a therapist was killed by unit patient);*Muskrat v. Deer Creek Public Schools,* 715 F.3d 775 (10th Cir. 2013) (teacher slapping student's cheek, arm, and restraining student at desk did not shock the conscience).

Mr. Carlin's alleged failure to immediately share a student discipline file when asked by law enforcement, does not shock the conscience. Plaintiff alleges that when WRPD asked for the school's investigation file, it had already initiated its own criminal investigation into Students 1 and 2.  ECF No. 29, ¶¶ 37-39.  STC also alleges that harassment during the summer, not the school year, caused her to seek a restraining order.  *Id.* at ¶ 34-37. STC does not allege the School District knew she sought a restraining order, or that the School District knew WRPD needed Mr. Carlin's investigation file to issue a restraining order. STC does not allege the School District had access to information that could not be gathered by WRPD or that WRPD was unable to interview or investigate Students 1 and 2 because of the School District's actions.  STC therefore fails to plead facts that show the Mr. Carlin's failure to provide the police the school's student discipline investigation file shocked the conscience.

**V.    Claim VII-Section 1983 failure to train against all Defendants- STC's failure to train claim is facially deficient.**

STC alleges the School District defendants are liable under 42 U.S.C. § 1983 for a failure to train Everitt teachers and staff about their obligation to supervise students in the hallways and protect students from harassment. ECF No. 29, ¶¶ 133-136.  STC's claim is predicated on the assumption that the School District had knowledge about "TTT" and "SAF," the alleged conduct giving rise for the need to train teachers and staff.

*Id.* at ¶¶ 19-10, 133-134. To hold the School District defendants liable under a failure to train theory, STC must plead facts that show the alleged failure to train Everitt teachers and staff was deliberately indifferent to the rights of Everitt students. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). To establish deliberate indifference, STC must show the School District had "actual or constructive notice that its action or failure to act [was] substantially certain to result in a constitutional violation, and it consciously or deliberately [chose] to disregard the risk of harm. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (female prisoner could not establish Section 1983 failure to train claim because city officials had no knowledge of previous sexual assaults).

STC does not allege sufficient facts that show the School District knew about "TTT" or "SAF." *See supra,* Argument Section I(C). STC cannot plausibly allege deliberate indifference if the School District did not know about "TTT" or "SAF."  STC has therefore failed to establish facts that support Claim VII.

**VI.  Claim VIII--Section 1983 "freedom of expression" against the School District and Mr. Gomez- STC does not allege facts that show her First Amendment rights were violated.**

In the fall of 2017, STC decided to tell other Everitt Middle School students she had been sexually harassed and assaulted by Students 1 and 2. ECF No. 29, ¶ 62.  In response, the school principal told her not to talk to other students about her experiences, in violation of her constitutional right to freedom of speech. *Id.* at ¶ 63. The government may not "deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech"—even though the person has no right to the valuable governmental benefit and "even though

the government may deny him the benefit for any number of reasons." *Seamons v. Snow*, 84 F.3d 1226, 1236 (10th Cir. 1996) (internal citations omitted).  In the Tenth Circuit, mere discussions by school officials in an effort to persuade someone not to speak out publicly does not constitute a violation of First Amendment rights.  *Id.* at 1237 (failure to state a claim against school officials for violation of their right to freedom of speech where the only conduct directed at them were discussions to persuade them not to speak out publicly).

STC does not allege facts that show her First Amendment rights were violated.  Like *Seamons,* the only conduct directed to STC were requests that STC not talk about the sexual harassment. STC does not allege the conversation with Mr. Gomez caused her to be denied a benefit or limited her speech. Nor does she allege Mr. Gomez threatened her with discipline or restrained her from reporting harassment. To the contrary, STC alleges that she continued to "lodge complaints with the school, Mr. Gomez, and Mr. Carlin, often on a weekly basis."  ECF No. 29, ¶ 65.  Mr. Gomez's request that STC not speak out publicly to other students is an insufficient fact upon which to reasonably infer liability for violating her First Amendment rights.

## VII. Claims against Mr. Carlin (IV-VII) and Mr. Gomez (IV-VI, VIII) must be dismissed pursuant to the doctrine of qualified immunity.

Qualified immunity "protects federal and state officials from liability for discretionary functions, and from 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit."  *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).  Issues of qualified immunity are best resolved at the "earliest possible stage in litigation."  *Hunter v. Bryan*, 502 U.S. 224, 227 (1991).

There is no respondeat superior liability under §1983.  *See Ashcroft,* 556 U.S at 676 ("Because vicarious liability is inapplicable to Bivens and §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Mr. Carlin and Mr. Gomez, each named in his individual capacity, are entitled to qualified immunity. When qualified immunity is raised in a Fed.R.Civ.P. 12(b)(6) motion, the plaintiff carries the heavy burden of establishing that the defendant's own conduct violated clearly established law. *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ*., 232 F.3d 1334, 1337 (10th Cir. 2000).

The Tenth Circuit scrutinizes dismissal on qualified immunity grounds using a strict two-step process.  *Lybrook*, 232 F.3d at 1337.  The plaintiff must demonstrate: 1) the defendant's own actions violated her constitutional or statutory rights; and (ii) the right was clearly established at the time of the alleged misconduct.  *Messeri v. Univ. of Colorado, Boulder*, No. 18-CV-2658-WJM-SKC, 2019 WL 4597875, at *16 (D. Colo. Sept. 23, 2019).  If the plaintiff fails to establish either part of the two-step process, the defendant is entitled to qualified immunity.  *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995).

To establish the first prong, a plaintiff must show the individual defendants were personally involved in the alleged constitutional deprivation. *See Foote v. Spiegel*, 118 F.3d 1416 (10th Cir. 1997). Plaintiff must allege defendants had actual knowledge of and acquiesced in the challenged conduct. *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir.1995).  STC has failed to plead facts that show Mr. Carlin or Mr. Gomez were personally involved in an alleged constitutional deprivation.

To satisfy the second prong, plaintiff must show the right was clearly established at the time of the challenged conduct.  "A right is clearly established in this circuit when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Messeri,* at 2019 WL 4597875, at *16.

As to Mr. Carlin, STC alleges:

- He received the initial report of sexual harassment on May 15, 2017 and met with AC and STC the following morning (ECF No. 29, ¶¶ 21, 24-25);
- He investigated the report of sexual harassment by gathering written statements and incident reports (*Id.* at ¶¶ 27, 32);
- His investigation did not concern the reports of off-campus sexual harassment (*Id.* at ¶ 25 (alleging Mr. Carlin said events off school ground were not of concern to him);
- In the fall of 2017, Mr. Carlin received complaints from AC and STC alleging Student 1, Student 2, and their friends were physically and verbally harassing her (*Id.* at ¶¶ 58-60);
- Mr. Carlin either did not investigate the complaints or take satisfactory remedial action because none of the students were punished (*Id.* at ¶¶ 60, 67).

As to Mr. Gomez, STC alleges:

- Mr. Gomez received a voicemail from AC on May 15, 2017 reporting sexual harassment (¶ 20);
- In the fall of 2017, Mr. Gomez told STC not to talk to other students about the sexual harassment (¶ 62);
- In the fall of 2017, Mr. Gomez received complaints from AC and STC alleging Student 1, Student 2, and their friends were physically and verbally harassing her (¶¶ 58-60);
- Mr. Gomez either did not investigate the complaints or take satisfactory remedial action because none of the students were punished (¶¶ 60, 67).

Each claim against Mr. Carlin and Mr. Gomez is analyzed below:

A.      **Claim IV Section 1983 equal protection-gender discrimination**

STC alleges she was discriminated against on the basis of her gender because she, rather than Students 1 and 2, was removed from class the last week of the 2016-2017 school year and had her 2017-2018 class schedule changed.  ECF No. 29, ¶¶ 29, 52, 54, 107-09.  Mr. Carlin and Mr. Gomez are entitled to qualified immunity because STC fails to satisfy the first prong of the two-part test. The Complaint does not contain any facts that distinguish what, if any, affirmative acts either Mr. Carlin or Mr. Gomez committed to violate STC's constitutional right to equal protection. STC alleges "the school" removed her from class and "the school" changed her schedule.  *Id.* at ¶¶ 29, 52.  There are no facts in the Complaint that show Mr. Carlin and/or Mr. Gomez had knowledge about, were personally involved in, or acquiesced to removing her from class and/or or changing her schedule.

B.      **Claim V Section 1983 equal protection-deliberate indifference to sexual harassment against Mr. Carlin and Mr. Gomez.**

STC alleges that Mr. Carlin and Mr. Gomez violated her equal protection rights because they were deliberately indifferent to other complaints about "TTT" and "SAF" which caused her to be sexually harassed by Students 1 and 2.  ECF No. 29, ¶¶ 114-116. No facts plausibly show an affirmative link between "TTT" and "SAF" and the sexual harassment by Students 1 and 2 that took place on and off campus.  If Mr. Carlin and Mr. Gomez did not know about "TTT" and "SAF," STC cannot plausibly allege their own actions (or inactions) violated her constitutional rights. *See Supra* Argument, Section I(A).  STC therefore fails to satisfy the first prong of the two-part test.

**C.**      **Claim VI-Section 1983 Substantive Due Process against Mr. Carlin.**

> **i.**      ***STC fails to plead facts that show Mr. Carlin's failure to provide the police with his investigation file violated her constitutional rights.***

STC alleges that because Mr. Carlin did not provide his investigation file to WRPD, WRPD could not get a restraining order over the 2017 summer. *Id.* at ¶ 123-25. STC fails to plead any facts that plausibly show Mr. Carlin's inaction violated STC's constitutional rights. STC's attempt to link Mr. Carlin's inaction to WRPD's inability to implement a restraining order or conduct its own investigation is facially implausible. On May 15, 2017, STC reported Students 1 and 2 to WRPD. *Id.* at ¶ 22. Mr. Carlin's investigation and his refusal to hand over his investigation file could not have plausibly impeded WRPD from conducting their own criminal investigation, interviewing Students 1 and 2, and responding to STC's request for a restraining order.

> **ii.**      ***No clearly established law.***

There is no clearly established law that would have put Mr. Carlin on notice that his conduct would violate Plaintiff's constitutional rights. There is no Supreme Court or other Tenth Circuit decision holding that a school administrators' failure to turn over an investigation file to the police department – a separate governmental agency – is a violation of a student's substantive due process rights, and even more so given the student privacy rights public schools are required to protect under the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g. STC's claim against Mr. Carlin fails the second-prong of the two-part test.

**D.**      **Claim VII -Section 1983 failure to train or supervise.**

Claim VII alleges Mr. Carlin and Mr. Gomez knew about "TTT" and "SAF" and failed to train Everitt staff about their obligations to supervise students in the hallways and protect students from harassment. ECF No. 29, ¶¶ 134-35. As argued in Argument, Section I, STC's claim against Mr. Carlin and Mr. Gomez is facially implausible. STC does not plead facts that show Mr. Carlin or Mr. Gomez had knowledge about "TTT" and/or "SAF." If they had no knowledge of "TTT" and "SAF," STC cannot plausibly allege their actions (or inactions) violated her constitutional rights.

### E. Claim VIII Section 1983 freedom of expression against Mr. Gomez.

Mr. Gomez is entitled to qualified immunity on Claim VIII alleging he violated STC's First Amendment rights because STC fails to establish the first prong of the two-part test. Mr. Gomez's request that STC not speak out publicly is not a violation of her First Amendment rights. *See Seamons,* 84 F.3d at 1237; *see also* Argument, Section VI.

### <u>CONCLUSION</u>

Plaintiff has failed to allege plausible federal claims for Claims I-II, and IV-VIII, which should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). As public educators, Mr. Carlin and Mr. Gomez are protected by qualified immunity and should be dismissed as individual defendants because their actions did not violate clearly established statutory or constitutional rights.

WHEREFORE, the School District respectfully requests dismissal of all claims except Claim III with prejudice and for such other relief this Court deems proper.

Respectfully submitted this 21st day of April, 2020.

On behalf of all Defendants,

CAPLAN AND EARNEST LLC

s/M. Gwyneth Whalen
M. Gwyneth Whalen
Elizabeth S. Francis
CAPLAN AND EARNEST LLC
3107 Iris Avenue, #100
Boulder, CO 80301
Phone 303-443-8010
Fax 303- 440-3967
gwhalen@celaw.com
efrancis@celaw.com

## CERTIFICATE OF SERVICE

This is to certify that on the 21st day of April, 2020, a true and correct copy of the foregoing Unopposed Motion for Extension of Time to File Responsive Pleading was filed with the US District Court of Colorado CM/ECF System which will notify the following:

Attorney for Plaintiff:
Edward Milo Schwab, Esq.
Ascend Counsel, LLC
3000 Lawrence St.
Denver, CO 80205
milo@ascendcounsel.com

s/ Shellie Satterfield
Shellie Satterfield, Paralegal