IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:20-cv-00078-CMA-SKC

A.C.
*as parent and next friend of minor*
S.T.C.

     Plaintiffs,

V.

JEFFERSON COUNTY R1 SCHOOL DISTRICT,
JEFF GOMEZ, *individually*, and
WILLIAM CARLIN, *individually,*

     Defendants.

---

**RECOMMENDATION RE: PARTIAL MOTION TO DISMISS [#33]**

---

S.T.C. was a student at Everitt Middle School in the Jefferson County R-1 School District, from 2016-2018. [#29 at ¶7.][1] During an informal orientation prior to S.T.C.'s sixth-grade year, older students informed the incoming students (including S.T.C.) that on Tuesdays, boys would touch girls' breasts in the hallways in a tradition referred to as "Titty Touch Tuesday" ("TTT"). [*Id.* at ¶9.] Fridays were known as "Slap Ass Fridays" ("SAF") and involved boys touching girls on their buttocks. [*Id.*] These antics have occurred since at least 2010 and often in front of teachers who did nothing about it. [*Id.* at ¶¶10-15.] These antics were also reported to teachers, guidance

---

[1] The Court uses "[#__]" to refer to docket entries in CM/ECF.

1

counselors, the principal, Defendant Jeff Gomez, and vice principal, Defendant William Carlin, who all remained indifferent to the reports. [*Id.*]

During her time at Everitt, S.T.C. was harassed on both TTT and SAF. [*Id.* at ¶15.] Beginning in the fall of 2016, two boys sexually assaulted S.T.C. numerous times. [*Id.* at ¶16.] This harassment included over 60 incidents which involved groping in the hallways, holding her against a locker, and putting their hands up her shirt and bra and inside her pants and underwear. [*Id.* at ¶¶16-17.] Because of the long-standing tradition of TTT and SAF, S.T.C. believed reporting these assaults would do no good. [*Id.* at ¶18.]

In May 2017, A.C. (S.T.C.'s mother) learned of the sexual assaults and immediately contacted the school, leaving a message for Gomez. That evening, A.C. received a phone call from Carlin, and she told him about the history of harassment and assaults. Carlin agreed to meet with A.C. the following morning. [*Id.* at ¶¶19-21.] A.C. also reported the assaults to the Wheat Ridge Police. [*Id.* at ¶22.] When A.C. and S.T.C. met with Carlin the next day to discuss the assaults, he responded—at least in part—by telling S.T.C.: "boys do that to show you that they like you." [*Id.* at ¶¶24-26.] In addition, because S.T.C. was in the same classes as Boy 1 and Boy 2, she was pulled from her classes, was unable to take final exams, and was given incomplete grades for the year. Boys 1 and 2 were permitted to take their final exams. [*Id.* at ¶¶29-31.]

During the summer break, Boys 1 and 2 began harassing S.T.C. for reporting them to Carlin, which drove S.T.C. to suicidal ideation and self-harm. [*Id.* at ¶¶34-

35.] A.C. and S.T.C. requested a restraining order, but the police were unable to obtain one because Carlin repeatedly refused to provide the police with his incident file, which included confessions from Boy 1 and Boy 2. [*Id.* at ¶¶37-39.] The police ultimately drafted a citation for Obstruction of a Police Officer. [*Id.* at ¶40.]

Prior to the next school year, S.T.C. learned she was placed in classes with her assailants. [*Id.* at ¶49.] When this was brought to the school's attention, the school removed her from honors classes, art classes, and other classes with Boys 1 and 2, but allowed the Boys to remain in their classes. [*Id.* at ¶¶48-54.] In addition, during the fall semester, Boy 1, Boy 2, and their friends continued to harass S.T.C. verbally and physically. Despite reporting these assaults, the incidents were never investigated, and the stress of the situation ultimately forced S.T.C. to withdraw from Everitt and the Jefferson County School District. [*Id.* at ¶¶58-60, 72.]

Plaintiffs initiated this action on November 1, 2019. [#4.] In their Third Amended Complaint ("TAC"), Plaintiffs assert Gomez, Carlin, and the School District violated Title IX, 20 U.S.C. § 1681, *et seq.*, as well as S.T.C.'s constitutional rights. [#29.] Defendants seek to dismiss most of these claims based on Plaintiffs' failure to allege facts sufficient to support each claim. [#33.] Their Motion to Dismiss was referred to the magistrate judge. [#36.] Having reviewed the TAC, the Motion and related briefing, and the governing law, the Court RECOMMENDS the Motion be GRANTED IN PART and DENIED IN PART.

## A. STANDARD OF REVIEW

1. <u>Fed. R. Civ. P. 12(b)(6)</u>

The Court accepts the well-pleaded facts as true and views the allegations in the light most favorable to the non-movant. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). The Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678 (internal quotation marks omitted).

The *Twombly/Iqbal* pleading standard requires that courts take a two-prong approach to evaluating the sufficiency of a complaint. *Id*. at 678–79. The first prong requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or threadbare recitals of the elements of a cause of action. *Id*. at 678. The second prong requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "Accordingly, in examining a complaint under Rule 12(b)(6), [courts] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly

4

suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). In other words, the court strips the complaint bare of the deficient allegations and determines whether the remaining allegations plausibly state a claim for relief. But the standard is a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

2.   <u>Qualified Immunity</u>

Gomez and Carlin have raised the qualified immunity defense concerning the claims against them in their individual capacities. Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). Qualified immunity is "immunity from suit rather than a mere defense to liability [and] it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Whether defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

When the qualified immunity defense is raised, the plaintiff bears the burden of showing, with particularity, facts and law establishing the inference that the defendant violated a clearly established federal constitutional or statutory right. *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994). If the plaintiff fails to satisfy

either prong, the defendant is entitled to qualified immunity. *Pearson*, 555 U.S. at 236. The court has the discretion to consider these prongs in any order. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

As to the first prong, "[i]f no constitutional right would have been violated were the allegations established," the inquiry is at an end. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong—whether the right was clearly established—must be considered "in light of the specific context of the case, not as a broad general proposition." *Id*. An official's conduct "violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing is violating that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*.

## B. ANALYSIS

In their Motion, Defendants challenge six of Plaintiffs' eight claims.[2] They contend Plaintiffs have failed to allege sufficient facts to support their claims and that Gomez and Carlin are entitled to qualified immunity.

### 1.   Claim One – Title IX: Deliberate Indifference

The TAC alleges the School District was aware of the long-standing culture of sexual harassment at Everitt—including TTT and SAF. [#29 at ¶¶74, 75.] Despite

---

[2] Although Defendants originally sought to dismiss Claim Two, they have since withdrawn that request. [#46 at p. 4.]

this knowledge, the TAC asserts the School District was deliberately indifferent to the harassment in violation of Title IX.

Under Title IX, "[n]o person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal assistance." 20 U.S.C. § 1681(a). Under section five of the Fourteenth Amendment, Congress "abrogated the States' Eleventh Amendment immunity under Title IX," and therefore, the School District may properly be sued by its students. *Franklin v. Gwinnett Cty. Pub. Schs.*, 503 U.S. 60, 72 (1992); s*ee also 42* U.S.C. § 2000d–7(a)(1) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of ... title IX of the Education Amendments of 1972.").

Both Title IX and Supreme Court precedent are clear that "students must not be denied access to educational benefits and opportunities on the basis of gender." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 1999. However, the School District may be held liable "only for its own misconduct." *Id*. at 640.

Liability under Title IX can be imposed "(1) only if the school remains deliberately indifferent to acts of harassment of which it has actual knowledge, (2) the harassment was reported to an appropriate person with the authority to take corrective action to end the discrimination, and (3) the harassment was so severe, pervasive and objectively offensive that it deprived the victim of access to the educational benefits or opportunities provided by the school." *Escue v. N. OK Coll.*, 450 F.3d 1146, 1152 (10th Cir. 2006) (internal citations and punctuation omitted).

### a.   Knowledge

The School District contends Plaintiffs have failed to allege sufficient knowledge on its part. Relying on *Jojola v. Chavez*, 55 F.3d 488 (10th Cir. 1995), the School District argues Plaintiffs' allegations are "wholly conclusory." The Court disagrees.

First, the allegations in *Jojola* are distinguishable from those here. There, the plaintiffs' daughter was forcibly molested by the school's custodian. *Id*. at 490. When the plaintiffs told the school's principal of the assault, he stated "that problems involving [the custodian] had arisen prior to the attack on [the plaintiffs' daughter]." The Tenth Circuit concluded this one "nonspecific" statement from the principal was insufficient to establish actual knowledge. *Id*. at 491.

By contrast, the TAC alleges many former students, who attended Everitt as far back as 2010, have come forward and confirmed "they were harassed and assaulted under this culture;" that TTT and SAF "were a defining feature of their experience at Everitt;" and "they complained and reported such action to teachers, guidance counselors," Gomez, Carlin, and "other school officials."[3] [#29 at ¶11.] It further alleges teachers frequently witnessed sexual harassment and assaults, and that this "conduct had also generated complaints to the school administration . . .." [*Id*. at ¶¶13, 15.] Even more, the TAC alleges the assaults S.T.C. was subjected to

---

[3] While the supporting allegations do not identify the former students who complained to Carlin and Gomez, or when, those allegations certainly go beyond the "unadorned, the-defendant-unlawfully-harmed-me accusations" contemplated in *Iqbal*. 556 U.S. at 678. Defendants' concerns with these allegations are evidentiary issues more appropriate for the summary judgment stage.

included TTT and SAF. [*Id.* at ¶15.] It further alleges A.C. "immediately contacted the school and left a message for Mr. Gomez, the principal at Everitt Middle School, telling him that her daughter had been sexually harassed and assaulted many times on school grounds;" and "later that evening, A.C. received a phone call from Mr. Carlin during which A.C. reported the sexual harassment and assault S.T.C. had endured." [*Id.* at ¶¶20-21.] It goes on to allege Carlin's response to A.C.'s complaint was to tell S.T.C. "boys do that to show you that they like you," and he then had S.T.C. complete an incident report. [*Id.* at ¶¶27 and 28.] The TAC also alleges Gomez was the School District's Title IX investigator [*id.* at ¶56], and when contacted by local law enforcement, he said: "what's the big deal, it's just a butt slap." [*Id.* at ¶45.] Considering Gomez and Carlin are the principal and vice principal, respectively, it is difficult to fathom lack of actual knowledge of TTT and SAF on the School District's part given these well-pleaded, factual allegations.[4] For these reasons, the TAC plausibly alleges the requisite actual knowledge on behalf of the School District.

To be sure, "[b]ecause knowledge is difficult to prove, in some circumstances, the Court can impute knowledge to a governmental entity." *Hilda M. v. Brown*, No. 10-cv-02495-WJM-KMT, 2011 WL 5220230, at *8 (D. Colo. Nov. 2, 2011). "[T]o do so, the plaintiff must show that unconstitutional misconduct was 'so widespread or flagrant that in the proper exercise of its official responsibilities the governing body

---

[4] The School District does not argue actual knowledge of its principal or vice principal is not attributable to the School District for purposes of this element under Title XI.

should have known of it.'" *Id*. (quoting *Jojola*, 55 F.3d at 491.). The TAC plausibly does just that.

The TAC alleges a widespread and open culture of TTT and SAF dating back to at least 2010.[5]  [#29 at ¶¶9, 10.] Chief among these allegations is the fact this conduct was so widespread and long-standing amongst the student body as to have been given "formal" names. Incoming students were informed by older students during the informal school orientation they should be prepared for these assaults to occur. [*Id*. at ¶9.]  This conduct occurred openly in front of teachers without recourse. [*Id*. at ¶12.] And it was pervasive enough that even local law enforcement was aware of TTT and SAF and previously tried to intervene. [*Id*. at ¶47.] Taken together, and construed in the light most favorable to Plaintiffs, the Court concludes Plaintiffs have alleged conduct so widespread and flagrant as to warrant imputing knowledge to the School District. *Jojola*, 55 F.3d at 491 (citing *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987)).

**b.  Educational Benefit**

Defendants also argue Plaintiffs failed to allege S.T.C. was deprived of an educational benefit. [#33 at p.7.] Defendants suggest it is not enough S.T.C. was deprived (via TTT and SAF) the benefit of an education free from severe, pervasive, and objectively offensive sexual harassment; rather, S.T.C. must have been deprived

---

[5] Defendants have not argued that TTT and SAF do not constitute severe, pervasive, and objectively offensive sexual harassment.

of additional educational opportunities or benefits to state an actionable claim. Again, the Court disagrees.

Although the Tenth Circuit, in *Murrell v. School District No. 1,* 186 F.3d 1238 (10th Cir. 1999), stated the Title IX inquiry as four parts rather than three—*i.e.* "…(3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities…"—this has been viewed as an aberration in the courts. *See Theno v. Tonganoxie Unified School Dist No. 464*, 377 F. Supp.2d 952 (D. Kan. June 24, 2005) ("[T]he other Courts of Appeal that have been confronted with this aspect of the Supreme Court's holding in *Davis* have analyzed this issue as one element, not two."). And the Tenth Circuit has more recently stated the inquiry as three elements. *Escue*, 450 F.3d at 1152. Like the Kansas District Court in *Theno*, this Court believes the test articulated in *Murrell* was an inadvertent characterization of the elements. *Theno*, 377 F. Supp.2d at 966-67.

To be sure, the Supreme Court has expressly tied severity to deprivation. *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650–51 (1999). In *Davis*, the Supreme Court specifically stated:

> *It is not necessary, however, to show physical exclusion* to demonstrate that students have been deprived by the actions of another student or students of an educational opportunity on the basis of sex. Rather, a plaintiff must establish sexual harassment of students that is *so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access* to an institution's resources and opportunities.

*Id.* (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 67, 67 (1986) (emphasis added). In this case, Plaintiffs have alleged severe, pervasive, objectively offensive sexual harassment of which the School District was aware and yet did nothing. No additional deprivations are necessary.

Even still, the TAC does allege the school responded to S.T.C.'s complaints about being placed in classes with her assailants by removing her from those classes and placing her in lower performing classes while allowing her assailants to keep those classes; and despite reporting these assaults, which included TTT and SAF, the incidents were never investigated or abated and the stress of the situation ultimately forced S.T.C. to withdraw from Everitt and the Jefferson County School District. [*Id.* at ¶¶58-60, 72.] Thus, even were the Court to entertain Defendants' argument, the TAC plausibly alleges the deprivation of additional educational opportunities or benefits, though not required to do so.

For these reasons, the Court recommends the Motion be DENIED as to the Title XI claim.

2. <u>Claim Four – 42 U.S.C. § 1983: Equal Protection (Gender Discrimination)</u>

The Equal Protection Clause "keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). To establish a violation of the Equal Protection Clause, a plaintiff must allege that a defendant acted with the intent to discriminate against the plaintiff because of the plaintiff's protected status. *Washington v. Davis*, 426 U.S. 229, 241 (1976). To prevail on an equal protection claim, a plaintiff must show she

was treated differently from others who were similarly situated. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985); *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998). "Individuals are similarly situated only if they are alike in all relevant respects." *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018).

Here, Plaintiffs contend Defendants discriminated against S.T.C. on the basis of her gender. In support of this, the TAC alleges that after S.T.C. reported sexual harassment, she was held out of classes while her assailants were not. [#29 at ¶29.] It also alleges Defendants did nothing to ensure Boys 1 and 2 were placed in different classes from S.T.C., and when their schedules ultimately coincided, Defendants removed S.T.C. from her honors, arts, and other classes. [*Id.* at ¶¶49-52.]

Plaintiffs contend S.T.C. and her assailants were similarly situated because they were all students seeking to participate in honors classes, art classes, and other educational opportunities. [#29 at p.15.] But while all three individuals were students seeking to participate in similar classes, the similarities end there. The Court agrees with Defendants that Boys 1 and 2 are not valid comparators.

Material to S.T.C.'s claim is the fact she was denied educational opportunities *after reporting* sexual harassment. Boys 1 and 2 did not report sexual harassment; rather they were accused of (and admitted) it. The Defendants correctly argue a more apt comparator would be a male student who reported sexual harassment but was, nevertheless, permitted to stay in the classes and school programs of his choosing.

Because the TAC fails to satisfy this element, the Court recommends this claim be dismissed.

3.   <u>Claim Five – 42 U.S.C. § 1983: Equal Protection (Deliberate Indifference)</u>

Defendants seek to dismiss this claim on the same basic principle as the previous—Plaintiffs failed to allege one group of students was treated differently than another group.[6] [#33 at p.11.]   In doing so, Defendants rely on cases standing for the uncontroversial proposition that "[g]enerally . . . the plaintiff must show that he or she is a member of a class of individuals that is being treated differently from similarly situated individuals that are not in that class." *Schaefer v. Las Cruces Pub. Sch. Dist.*, 716 F. Supp. 2d 1052, 1066 (D.N.M. 2010). [*See* #46 at p.4.] But Defendants appear to misapply or misunderstand the law.

"In cases involving an equal-protection violation based on sexual harassment, [the Tenth Circuit has] not required the plaintiff to show she was treated differently from a similarly situated individual." *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1235 (10th Cir. 2014). *See also Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989) ("We hold that sexual harassment of the sort alleged by plaintiff can violate the Fourteenth Amendment right to equal protection of the laws."); *Long v. Laramie Cty. Cmty. Coll. Dist.*, 840 F.2d 743, 752–53 (10th Cir. 1988) (allowing plaintiff to proceed "under §§ 1983 and 1985 on the sexual harassment theory" despite plaintiff's failure to prove

---

[6] Defendants also argue this claim fails because Plaintiffs do not allege actual knowledge. Because the Court has already disposed of this argument it does not address it again here.

Title VII claim for same conduct).[7] A plaintiff may hold a school district liable under § 1983 by alleging a discriminatory practice so pervasive and widespread that it constitutes a custom. *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1249-50 (10th Cir. 1999) (citing *Starrett v. Wadley*, 876 F.2d 808, 820 (10th Cir. 1989). To establish the deliberate indifference, and therefore liability, of individual actors (in this case Gomez and Carlin), a plaintiff must state facts sufficient to allege a defendant (1) knew of and (2) acquiesced to the discriminatory conduct of another. *Id.* at 1250. Defendants, however, fail to address any of the salient elements of these inquiries.

Moreover, as explained above, the TAC plausibly alleges a pervasive and widespread discriminatory practice, and that Gomez and Carlin knew of the sexual harassment and assault S.T.C. was subjected to. The Court finds it further plausibly alleges Gomez and Carlin acquiesced to this discriminatory conduct by doing nothing about it. [#29 at ¶¶23-27, 45, 56, 58-62, 66.] Consequently, the Motion should be DENIED with respect to Claim Five.

4. <u>Claim Six – 42 U.S.C. § 1983: Substantive Due Process</u>

The TAC limits the specific allegations in support of this claim to the following:

123.   Mr. Carlin obtained confessions from the two boys prior to summer break that they had indeed engaged in non-consensual sexual assaults on S.T.C.

124.   When asked by the Wheat Ridge Police Department to produce such reports and confessions, Mr. Carlin refused to comply.

---

[7] To be sure, even Defendants' cited case recognizes the distinction between the two types of equal protection claims. *See Schaefer*, 716 F. Supp.2d at 1075-76 (concluding plaintiff failed to allege treatment different from similarly situated individuals *but also* considering whether the allegations might fall under the rubric set out in *Murrell*).

125.   Mr. Carlin was aware that without these documents, the police could not institute a restraining order against the two boys in favor of S.T.C.

126.   In doing so, Mr. Carlin created a foreseeable risk to S.T.C. that the boys would continue to harass S.T.C.

127.   The boys did in fact harass, stalk, and intimidate S.T.C. throughout the summer.

128.   S.T.C. was without recourse to a restraining order on the basis of Mr. Carlin's actions.

129.   S.T.C. was placed in danger as a result of this inability to obtain a restraining order.

[*Id.* at ¶¶123-29.]

"The Fourteenth Amendment . . . contains a judicially recognized substantive due process component that protects an individual's life, liberty and property against certain government actions regardless of the fairness of the procedures used to implement them." *Schnurr v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 189 F. Supp.2d 1105, 1121 (D. Colo. 2001) (internal quotation marks and citation omitted). The Fourteenth Amendment does not generally impose an affirmative obligation on a state to ensure that its citizens are not deprived of life, liberty, or property. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). But there are two exceptions to this general rule: the "special relationship" doctrine and—as relevant in this case—the "danger creation" theory. *See Christiansen v. City of Tulsa*, 332 F.3d 1270, 1279-80 (10th Cir. 2003) (providing an overview of the special relationship doctrine and danger creation theory).

The danger creation theory "applies only when a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence." *Robbins v. Okla.*, 519 F.3d 1242, 1251 (10th Cir. 2008) (internal quotation marks omitted) (citing *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001)). To establish a substantive due process claim under the danger creation doctrine, a plaintiff must show (1) the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking. *Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1173 (10th Cir. 2013) (citing *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1281 (10th Cir. 2003)). The TAC fails to plausibly allege elements four through six.

To establish a state actor is liable under 42 U.S.C. § 1983, "it is not enough to show that the state increased the danger of harm from third persons; the [§] 1983 plaintiff must also show that the state acted with the requisite degree of culpability in failing to protect the plaintiff." *Uhlrig v. Harder*, 64 F. 3d 567, 573 (10th Cir. 1995) (quoting *Leffal v. Dallas Indep. Sch. Dist.*, 28 F. 3d 521, 531 (5th Cir. 1994)). A substantive due process claim must be predicated on more than an ordinary tort; rather, it must be premised on "reckless or intentional injury-causing state action which shocks the conscience." *Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1262 (10th Cir. 1998) (citing *Uhlrig*, 64 F.3d at 572.) "[I]n reckless conduct, the defendant

recognizes the unreasonable risk and *actually intends* to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Uhlrig*, 64 F.3d at 573 n.8 (emphasis added). *See also Woodward v. City of Worland*, 977 F.2d 1392, 1399 n. 11 (10th Cir.1992) (Recklessness "requires proof that the defendant focused upon the risk of unconstitutional conduct and deliberately assumed or acquiesced in such risk.").

Here, the TAC alleges Boys 1 and 2 confessed to Carlin that they sexually assaulted S.T.C. [#29 at ¶123.] But when police requested Carlin's reports and the confessions, he refused to provide them despite knowing the police could not obtain a restraining order against the Boys without these documents. [*Id.* at ¶¶124-25.] But these allegations fail to plausibly establish the level of recklessness or deliberately willful behavior necessary for finding a due process violation.

First, the allegation that Carlin "*was aware* that without these documents, the police could not institute a restraining order against the two boys in favor of S.T.C." is conclusory. There are no corresponding factual allegations to plausibly establish Carlin's awareness of the officers' ability to institute a restraining order without his documents, or his awareness the officers' intended to institute a restraining order at all. In their Response, Plaintiffs argue the police told Carlin his actions were impeding them from obtaining the order or protecting S.T.C. [#42 at p.19.] But the TAC contains no such allegations. [*See* #29 at ¶¶37-39.] Plaintiffs cannot amend the TAC with their responsive pleading. *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion.").

Second, the timing alleged in the TAC further damages the plausibility of this claim. This claim focuses on alleged harassment the Boys subjected S.T.C. to over the summer. [*Id.* at ¶¶123-29.] There are no allegations in the TAC that Carlin was aware of any summertime harassment. Instead, the TAC alleges Carlin was aware of sexual harassment that occurred during the 2016-2017 school year. Indeed, it alleges he secured the Boys' confessions "prior to summer break." [*Id.* at ¶123.] It then alleges he created a "foreseeable risk to S.T.C." that the Boys would continue to harass her, and that the Boys "did in fact harass, stalk, and intimidate S.T.C. *throughout the summer*." [*Id.* at ¶¶34-39, 126-27 (emphasis added).] Even if the TAC plausibly alleged Carlin knew the police were seeking a restraining order, there are no allegations to plausibly infer he was aware of the Boys' conduct during the summer or that the police were attempting to institute a restraining order on that basis.

The Court cannot presume facts that were not pleaded. Without additional factual allegations, the allegation that Carlin—in his refusal—intended to expose S.T.C. to the risk of further harassment without regard to the consequences, is merely conclusory. Thus, the Court recommends this claim be dismissed.

5.   Claim Seven – 42 U.S.C. § 1983: Failure to Train

In this claim, Plaintiffs argue the School District, Gomez, and Carlin were deliberately indifferent to the injuries that might be caused by a failure to train teachers and staff in ways to supervise and protect students from harassment and assault. [#29 at ¶¶131-137.] Deliberate indifference is established only when a defendant has actual or constructive notice that its actions or omissions are

substantially likely to result in constitutional violations, and it deliberately chooses to disregard that risk of harm. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002). "In most instances, notice can be established by proving the existence of a pattern of tortious conduct." *Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003).

Defendants again argue Plaintiffs have failed to allege sufficient facts to show Defendants knew about TTT or SAF. [#33 at pp.15-16.] The Court addressed this argument in its analysis of Claim One and was unpersuaded by Defendants' arguments. [*Supra* Section B.1.a.] Defendants have offered no other arguments concerning this claim. Because the Court concludes Plaintiffs' allegations plausibly allege Defendants' requisite knowledge of TTT, SAF, and the sexual assault and harassment of S.T.C. by Boys 1 and 2, the Court recommends the Motion be DENIED as to this claim.

6.   Claim Eight – 42 U.S.C. § 1983: Freedom of Expression

The First Amendment guarantees freedom of speech and applies to the states through the Due Process Clause of the Fourteenth Amendment. *See, e.g., Gitlow v. New York*, 268 U.S. 652, 666, 45 S.Ct. 625, 69 L.Ed. 1138 (1925). Students and teachers do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Comm'y Sch. Dist.*, 393 U.S. 503, 506 (1969). But "the constitutional rights of students in public schools are not automatically coextensive with the rights of adults in other settings." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986). Schools must be given authority

"consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." *Tinker*, 393 U.S. at 507.

In their final claim, Plaintiffs allege in the fall of 2017, during the start of the "Me Too"[8] movement, S.T.C. began telling other students about her assaults. [#29 at ¶ 61.] On several occasions, Gomez told S.T.C. not to talk about her assaults and stated, "no one need[ed] to know anything about [them]." [*Id.* at ¶62.]

Defendants contend Plaintiffs' First Amendment claim should be dismissed because they have failed to allege facts showing S.T.C.'s rights were violated. Although not specifically framed as such, this argument calls into question whether Plaintiffs have sufficiently alleged standing to bring this claim.

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The case or controversy limitation requires that a plaintiff have standing." *United States v. Colo. Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996). Standing requires that a plaintiff have an actual stake in the controversy. *Brady Campaign to Prevent Gun Violence v. Brownback*, 110 F. Supp. 3d 1086, 1091 (D. Kan. 2015). A plaintiff can show this stake by demonstrating (1) she has suffered an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood the injury will be redressed by a favorable decision. *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir.

---

[8] The "Me Too" movement is a social justice and empowerment movement meant to draw attention to, and support and empower survivors of sexual violence and harassment. Abby Ohlheiser, "*The woman behind 'Me Too' knew the power of the phrase when she created it – 10 years ago*," The Washington Post, October 19, 2017.

2003). An injury in fact is an "invasion of a legally protected interest" that is (a) concrete and particularized, and (b) actual or imminent, *i.e.*, not conjectural or hypothetical. *Lujan*, 504 U.S. at 561. At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," and courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id*. (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

The Court agrees with Defendants that Plaintiffs have not alleged a concrete and particularized injury. Although Gomez instructed S.T.C. not to discuss her assaults, Plaintiffs do not allege S.T.C. actually ceased. Rather, the allegations suggest S.T.C. continued to speak and had to be instructed on repeated occasions. There are no allegations Gomez threatened S.T.C. with discipline or other consequences if she failed to stop discussing her assaults; nor are there allegations S.T.C. was deprived of an educational benefit because she chose to speak out. *See, e.g.*, *Seamons v. Snow*, 84 F.3d 1226, 1236 (10th 1996) ("The government may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech . . . ") (student stated a First Amendment claim when he was removed from the high school football team because he reported his own sexual assault by fellow team members). In a single allegation, the TAC only vaguely alleges Gomez chose to "punish" S.T.C.'s viewpoint. [#29 at ¶142.] But there are no other factual allegations to suggest what punishment occurred, or to plausibly tie the alleged punishment to S.T.C.'s conduct in telling

others about her assaults. Rather, taken in context with the other allegations in the TAC, it appears the punishment was only Gomez telling S.T.C. not to discuss her assaults.

Because the allegations, as currently pleaded, do not establish an injury in fact, this claim should be dismissed without prejudice. *Brown v. Buhman*, 822 F.3d 1151, 1179 (10th Cir. 2016) ("a dismissal for lack of jurisdiction is not an adjudication of the merits and therefore dismissal . . . must be without prejudice").

7.    Qualified Immunity

Gomez and Carlin assert they are entitled to qualified immunity. The Court has already recommended Claims Four, Six, and Eight be dismissed so it confines its analysis to Claims Five and Seven. With respect to these claims, however, Defendants yet again rely on their position that the allegations do not establish Gomez and Carlin had knowledge of TTT and SAF. [#33 at pp.20, 22.] The Court has already addressed and rejected this argument. And because Defendants did not discuss whether the law was clearly established, the Court will not either. *See Hill v. Kemp*, 478 F.3d 1236, 1251 (10th Cir. 2007) (the court is not compelled to undertake "self-directed research or pursue late and undeveloped arguments"). The Court recommends finding neither Gomez nor Carlin are entitled to qualified immunity on Claims Five and Seven.

*        *        *

For the foregoing reasons the Court RECOMMENDS:

Defendants' Partial Motion to Dismiss be GRANTED IN PART and DENIED IN PART, as follows: (1) Claims Four and Six be dismissed for failure to state a claim;

(2) Claim Eight be dismissed without prejudice for lack of jurisdiction; and (3) the Motion be denied as to Claims One, Five, and Seven.

DATED:       February 22, 2021

                                        BY THE COURT:

                                        S. Kato Crews
                                        United States Magistrate Judge

**Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, and waives appellate review of both factual and legal questions. *Thomas v. Arn*, 474 U.S. 140, 148–53 (1985); *Makin v. Colorado Dep't of Corrs.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412–13 (10th Cir. 1996).**