IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00078-CMA-SKC

S.T.C.

    Plaintiff,

v.

JEFFERSON COUNTY R1 SCHOOL DISTRICT, JEFF GOMEZ, and WILLIAM CARLIN.
    Defendants.

---

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT (ECF NO. 134)

---

Plaintiff S.T.C., through undersigned counsel, respectfully responds to Defendants' Motion for Summary Judgment (ECF No. 134) and in support thereof, provides as follows:

**RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. Plaintiff does not dispute Defendants' Undisputed Material Facts ("UMF") contained in paragraphs: 1-14, 16, 18-19, 21-29, 31, 33-41, 43-44, 48, 50-52, 54-59, 61-63, 66, 69-71, 73-76, 78-85, 87, 89-111, 114-117, 119-123.

2. <u>Response to Paragraph 15:</u> Deny. Defendant Carlin told STC and her mother during the May 16 meeting that this is how boys show you that they like you. Perhaps Defendant Carlin believed this to be an effort to comfort a victim of sexual assault. Defendant Carlin gave no indication that he would try to address her concerns. *Ex. 6*, ¶¶ 36-40; *Ex. 7*, ¶¶ 9-10.

3. <u>Response to Paragraph 17:</u> Deny. STC reported Titty Touch Tuesday and Slap Ass Friday to her Counselor, Allison MacDonald in the beginning of Seventh Grade. *Ex. 10*, 110:5-16.

4. <u>Response to Paragraph 20:</u> Deny. Cuney told Carlin that he needed to "turn [his files] over to [Cuney]" and that "school discipline was his concern" but that it shouldn't interfere with the police investigation. Moreover, Cuney told Carlin that "he needs to turn over everything he had up until that point. *Ex. 11*, p. 2.

5. <u>Response to Paragraph 30:</u> Deny. Carlin became "argumentative" with Cuney when she instructed him to hand over everything he had. *Ex. 11*, p. 2.

6. <u>Response to Paragraph 32:</u> Deny. STC complained to Ms. MacDonald about Titty Touch Tuesday and Slap Ass Friday in September of 2016. *Ex. 10*, 110:5-16.

7. <u>Response to Paragraph 42:</u> Deny. Officer Cuney contacted Carlin on May 15, 2017 to request all documents he had. *Ex. 11*, p. 2.

8. <u>Response to Paragraph 45:</u> Deny. STC and her mother agreed only because her only other option was to be placed in classes with boys you assaulted her. *Ex. 6*, ¶ 53-59.

9. <u>Response to Paragraph 46:</u> Deny. STC and her mother agreed only because her only other option was to be placed in classes with boys you assaulted her. *Ex. 6*, ¶ 53-59.

10. <u>Response to Paragraph 47:</u> Deny. Defendant Gomez could have moved whomever he wanted and instead hid behind this excuse while at the same time, Defendant Carlin was intentionally withholding information from the Police despite their efforts to obtain such information.

11. <u>Response to Paragraph 49:</u> Deny to the extent that this allegation suggests that the police were not moving the investigation along fast enough. This was based on the school's

representations to A.C. *Ex. 12*, 41:1-8. Instead, A.C. learned that the school was withholding evidence from the police. *Ex. 7*, ¶ 13.

12. <u>Response to Paragraph 53:</u> Deny. A.C. did email Allison MacDonald on August 24, 2017 to inform MacDonald that STC was struggling with seeing R.S. and S.S. everyday, dealing with "dirty looks and comments from their friends." *Ex. 13*. A.C. also stated that STC felt it was "unfair that she is the one who has to make all of the changes and deal with all of this." *Id*. A.C. then wondered whether given the school's failure to keep STC safe, whether STC should "just complete her middle school years online." *Id*. This was not a question, but instead was an acknowledgement that the school was unwilling to provide STC with a safe learning environment. *Ex 7*, ¶¶ 37-41.

13. <u>Response to Paragraph 60:</u> Deny. STC only agreed because the school was unwilling to provide her with a safe environment. *Ex. 6*, ¶ 53-59.

14. <u>Response to Paragraph 64:</u> Deny. Carlin told Cuney that he "doesn't feel he needs to share this information with police with concern for student's privacy. *Ex. 11*, p. 5.

15. <u>Response to Paragraph 65:</u> Deny. Carlin was argumentative and said that he would call the district and Detective Johnson. *Id*.

16. <u>Response to Paragraph 67:</u> Deny. AC told Ms. MacDonald that the school had all the things that she and STC had wanted in a school. STC was not happy with being forced out of honors classes. *Ex. 7*, ¶¶ 41-42.

17. <u>Response to Paragraph 68:</u> Deny. STC did not tell any "classmates" that she was raped by a male classmate. STC shared her assaults with a classmate who called STC's assaults a rape. *Ex. 6*, ¶ 62; *Ex. 14*.

3

18. <u>Response to Paragraph 72:</u> Deny. STC was not good with this conversation. STC was told by Gomez that she shouldn't tell anyone about her assaults. STC believed she shouldn't be silenced about her assaults, particularly on school grounds. *Ex. 6*, ¶¶ 63-65.

19. <u>Response to Paragraph 77:</u> Deny. AC was told by the Wheat Ridge police that she could not obtain a protective order until the school provided the full information. STC, a child at the time, did not have the knowledge opposing counsel suggested to her during her deposition. *Ex. 7*, ¶ 30.

20. <u>Response to Paragraph 86:</u> Deny. STC did provide names of her assailants. Ex. 6, ¶¶ 70-71; *Ex.* 15; *Ex.* 16..

21. <u>Response to Paragraph 88:</u> Deny. STC did provide names of her assailants. Ex. 6, ¶¶ 70-71; *Ex.* 15; *Ex.* 16..

22. <u>Response to Paragraph 112:</u> Deny. Mr. Gomez did not testify that he heard rumors. Gomez stated that "within a year or two of his arrival at Everitt in the fall, September…several students would come to [him] and say 'I need to talk to you Mr. Gomez.' And they would say that they've been hearing that this has been happening in the school." These students were "concerned about it possibly happening to them." Additionally, students came forward to tell Mr. Gomez about their own assaults. Lastly, here are no records to indicate that any assembly was held on the topic of Titty Touch Tuesday or Slap Ass Friday. *Ex. 17*, 55:8-24, *Ex. 3*, ¶¶ 13-14; *Ex. 18*, Requests for Production Nos. 4-6.

23. <u>Response to Paragraph 113:</u> Deny. There are no records to indicate that any assembly was held on the topic of Titty Touch Tuesday or Slap Ass Friday. *Ex. 18*.

4

24. <u>Response to Paragraph 118:</u> Deny. Students complained about Titty Touch Tuesday and Slap Ass Friday. *Ex. 3*, ¶¶ 13-14.

## STATEMENT OF ADDITIONAL DISPUTED FACTS

25. For nearly a decade before STC arrived at Everitt Middle School, female students were subjected to weekly sexual harassment and assault. Ex. 1, ¶¶ 1-7; Ex. 2 ¶¶ 1-7; *Ex. 3*, ¶¶ 1-9; *Ex. 4*, ¶¶ 1-6; *Ex. 5*, ¶¶ 1-7; *Ex. 9*, ¶¶ 1-7.

26. This culture of sexual assault had a name: Titty Touch Tuesday and Slap Ass Friday. *Id*.

27. Between at least 2010 and 2018, a generation of female students had their breasts groped on Tuesdays and their butts slapped on Fridays in the hallways of Everitt on a weekly basis. *Id*.

28. From as early as his first year, girls began to come to Mr. Gomez seeking protection. *Ex. 17*, 54:24-55:24; *Ex. 3*, ¶¶ 13-14.

29. Mr. Gomez was approached across multiple years with complaints about Titty Touch Tuesday and Slap Ass Friday. *Ex. 17*, 54:24-55:24

30. Gomez admits that these girls came to him because they were concerned about being assaulted under Titty Touch Tuesday and Slap Ass Friday. *Ex. 17*, 55:23-24.

31. Nonetheless, Mr. Gomez dismissed the seriousness of these girls' requests, treating them as rumors instead of what they were: complaints of sexual harassment and failing to investigate these girls' concerns. *Ex. 17*, 54:24-55:24; *Ex. 19*, 63:5-16.

32. At the same time, Mr. Gomez instructed students that if they were the victims of sexual harassment or assault, they should inform "a trusted adult." *Ex. 20*, 35:18-22.

33. Teachers, and even custodians, could be trusted adults. *Ex. 20*, 35:23-36:17.

5

34. And female students did report their assaults under Titty Touch Tuesday and Slap Ass Friday to teachers and counselors nearly every year between 2010 and 2018. *Ex. 3*, ¶¶ 11-14; *Ex. 8*, ¶¶ 5-7.

35. Teachers also witnessed Titty Touch Tuesday and Slap Ass Friday in the hallways between periods. Ex. 1 ¶¶ 8-9; Ex. 2 ¶¶ 8-10; *Ex. 3*, ¶ 14; *Ex. 4*, ¶¶ 7-8; *Ex. 5*, ¶ 8; *Ex. 5*, ¶ 12.

36. However, teachers did nothing to stop it. And the school did nothing to stop it; no assemblies, no discussions in class, no loudspeaker announcements - nothing. Ex. 1 ¶¶ 10, 15; Ex. 2 ¶¶ 10-13; *Ex. 3*, ¶¶ 15-18; *Ex. 4*, ¶ 9; *Ex. 5*, ¶¶ 10; *Ex. 8*, ¶ 8; *Ex. 5*, ¶ 14; *Ex. 18*.

37. There is no evidence that the school took any action to address Titty Touch Tuesday nor Slap Ass Friday with students or teachers. *Ex. 18*.

38. Titty Touch Tuesday was not a game. It was a culture of serious sexual harassment and assault, one that affected many girls, limiting their high school experiences, causing them to walk through the hallways trying to protect themselves with their backpacks covering their butts and binders, and it continued to affect these students later in life. Ex. 1 ¶ 14, Ex. 2 ¶¶ 9, 14; *Ex. 3*, ¶¶ 19-22; *Ex. 4*, ¶¶ 11, 13; *Ex. 5*, ¶¶ 9, 12; *Ex. 5*, ¶ 16.

39. Unfortunately for many of these female students, Titty Touch Tuesday and Slap Ass Friday were so pervasive and the school was so permissive that they came to believe that this was a normal thing in a girls' life and didn't even report it. Ex. 1 ¶ 12, Ex. 2 ¶¶ 9, 13; *Ex. 4*, ¶ 10; *Ex. 5*, ¶ 11.

40. Everitt also promoted a sexist policy where when girls, but only girls, were cited for a dress code violation or bled through their pants while menstruating, they were forced to wear

6

bright orange clothes called "Oops clothing" to humiliate them. *Ex. 1* ¶¶ 17-19; *Ex. 4*, ¶¶ 12; *Ex. 9*, ¶¶ 17..

41. When STC arrived at Everitt, she was told about Titty Touch Tuesday and Slap Ass Friday as part of an informal orientation for seventh graders. *E. 6*, ¶¶ 2-5.

42. STC was subjected to Titty Touch Tuesday and Slap Ass Friday every week. *Id*. at ¶¶ 6-7.

43. As with previous years, Titty Touch Tuesday and Slap Ass Friday were widespread and normalized and done in the presence of teachers while STC was at Everitt. *Id*. at ¶¶ 8-14.

44. Nonetheless, STC reported Titty Touch Tuesday and Slap Ass Friday to her counselor, Allison MacDonald, a trusted adult. *Id*. at ¶¶ 15-18.

45. Ms. MacDonald didn't investigate or report this incident. *Id*. at ¶ 19.

46. The school's indifference confirmed to her that this was normal. *Id*. at ¶¶ 19-20.

47. Over the course of her seventh grade year, STC was assaulted between sixty and one hundred times under Titty Touch Tuesday and Slap Ass Friday on and off school campus, mostly by two friends, S.R. and R.R. *Id*. at ¶¶ 10, 21-25.

48. Towards the end of the school year, STC reported these assaults to Carlin. *Id*. at ¶¶ 26-41.

49. Mr. Carlin's response was that this is how boys show you that they like you. *Id*. at ¶¶ 36-38, *Ex. 7*, ¶ 9.

50. At this point, Mr. Carlin obtained written confessions from both of the boys, but withheld these confessions from the Wheat Ridge Police. *Ex. 21*.

51. STC was not permitted to take her final exams while the boys did. *Ex. 6*, ¶¶ 42-43, *Ex. 7*, ¶ 11.

52. Over the summer, these boys continued to harass STC. STC's mother tried unsuccessfully to obtain a restraining order. *Ex. 6*, ¶ 44, *Ex. 7*, ¶¶ 12-15.

53. When schedules came out for eighth grade the following August, STC discovered that she had been placed in classes with each of her assailants. *Ex. 6*, ¶¶ 45-46, *Ex. 7*, ¶¶ 17-20.

54. STC and her mother went to speak with Principal Gomez about making sure that STC wouldn't be forced to take classes with her assailants. *Ex. 23*; *Ex. 6*, ¶¶ 47-48, *Ex. 7*, ¶ 21.

55. Mr. Gomez offered only to move STC from the classes with these boys. *Ex. 6*, ¶ 49, *Ex. 7*, ¶¶ 22-29.

56. At that time, Everitt was split into two hallways, one with the advanced classes and one with the remedial classes. *Ex. 6*, ¶ 50.

57. Mr. Gomez stated that STC could either take advanced classes with her assailants or move to the remedial classes. *Id*. at ¶¶ 51, 53, *Ex. 7*, ¶ 24.

58. Mr. Gomez did not want to interrupt the schedules of STC's attackers. *Ex. 6*, ¶ 52.

59. Faced with this choice, STC unhappily chose remedial classes over being in the same room as her assailants. *Id*. at ¶ 53-59.

60. Within a few weeks of school beginning, STC was moved to a virtual academy for science. *Ex. 24*.

61. At this same time, STC's mother was still trying to get a restraining order, but the Wheat Ridge Police told her Mr. Carlin was withholding evidence. *Ex. 7*, ¶¶ 29-30.

62. Mr. Carlin was aggressive with one officer and refused to provide the confessions he had obtained. *Ex. 11*.

63. This led the Wheat Ridge Police to prepare charges for obstruction of a police officer against Tim Carlin. *Ex. 11*.

64. As soon as the school year began, the friends of the boys began harassing STC. *Ex. 13*.

65. STC began to talk about her assaults and wear clothes reminiscent of the Me Too movement. Mr. Gomez told STC to stop talking about her assaults. *Ex. 6.* at ¶¶ 63-65.

66. After STC's assailants were removed from the school, STC's assaillants' friends began to step up their harassment in the halls. *Id..* at ¶¶ 66-68.

67. STC and her mother reported this ongoing harassment to the school. *Id* at ¶¶ 69, *Ex. 7*, ¶¶ 31-36, 48-52, *Ex. 22*.

68. When STC spoke with Gomez and Ms. MacDonald, she gave them the names of the students who had been calling her a slut and a whore and locations of her assaults. *Ex 6.* at ¶¶ 70-72.

69. Mr. Gomez then sent an email to STC's mother stating that he "took action with those that STC states are involved." *Ex. 16*.

70. It appears this was a meeting with eight boys where Gomez issued a warning and no consequences. *Ex. 15*.

71. Nonetheless, these boys continued to harass STC. She continued to complain to Gomez, but no further action was taken. *Ex. 6*, ¶¶ 78-81.

72. This failure to protect STC led her to slowly withdraw from class, spending most of her days in the counselor's office where she was safe from harassment. *Id*. at ¶¶ 82-85. *Ex. 7*, ¶¶ 52-54

73. Ultimately, STC dropped out of the JeffCo school district because of her experiences at Everitt. *Ex. 6*, ¶¶ 86-88, *Ex. 7*, ¶ 54.

## ARGUMENT

9

I. **THE IS A DISPUTE OF FACT AS TO EACH OF PLAINTIFF'S THREE CLAIMS UNDER TITLE IX**

A. **TITLE IX STANDARD**

Title IX provides in relevant part, "'no person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.'" *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 143 (quoting 20 U.S.C. § 1681(a) (1994)). Title IX is enforceable through an implied private right of action for which money damages are available. *See id*.

B. **There Is A Genuine Dispute Of Fact As To Plaintiff's Assaults**

Defendants misapprehend the law as it relates to Plaintiff's First claim under Title IX. Plaintiff's First Claim for relief is properly evaluated under the *Davis* standard.

Defendants propose that Plaintiff's First Claim under Title IX should be evaluated under the *Simpson* standard. *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170 (10th Cir. 2007). The *Simpson* court established a standard for a unique scenario: when a school institutes an official policy for which it should be aware of the obvious risk to students. *See Horocofsky v. City of Lawrence*, 2022 WL 1421554, *37-38 (D. Kan. May 5, 2022) ("The deliberate indifference standard of *Simpson* is a limited exception to the requirement in *Davis* that a recipient of Title IX funds is only responsible for sexual harassment in programs or activities under its control. The standard is 'confined to circumstances where a federal funding recipient sanctions a specific program that, without proper control, would encourage sexual harassment and abuse such that the need for training or guidance is obvious.'"). Here, Plaintiff has not alleged that Titty Touch

10

Tuesday or Slap Ass Friday were school-sanctioned programs. Accordingly, the *Davis* standard is the correct standard to apply to Plaintiff's First Claim.

A school district may be liable under Title IX if it (1) has actual knowledge of, and (2) is deliberately indifferent to, (3) harassment that is so severe, pervasive and objectively offensive as to (4) deprive access to the educational benefits or opportunities provided by the school. *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999). Here, Defendants only contest that Everitt was not deliberately indifferent to Titty Touch Tuesday and Slap Ass Friday.

The record contains evidence that Principal Gomez, a responsible individual under Title IX, had actual knowledge of Titty Touch Tuesday and Slap Ass Friday. SADF[1] ¶ 29. The record also contains evidence that Titty Touch Tuesday and Slap Ass Friday were severe, pervasive, and so objectively offensive that they deprived Plaintiff of educational benefits and opportunities. SADF ¶¶ 25-27, 38.

For nearly a decade female Everitt students were subjected to sexual assault and harassment in the halls of their middle school. There is no proof that the school took any action to address this issue. Indeed, Principal Gomez never even investigated student complaints. SADF ¶ 31. The school held no assemblies, loudspeaker announcements, or classroom discussions ever occurred. SADF ¶¶ 36-37. This is all in spite of the fact that teachers watched this happen in the hallways every week. SADF ¶ 35. The school could have produced a single teacher, a single record, a single email, substantiating that the school took efforts to address this pervasive culture. SADF ¶ 36. All Defendants can offer is the deposition testimony of a Principal who has been confronted with failings which caused serious trauma to an untold number of female students for

---

[1] Statement of Additional Dispute Facts

whom he was supposed to protect. SADF ¶ 38. There is a serious question of material fact as to whether the school took any action at all to address these complaints made by female students. However, even Defendant Gomez's characterization of those complaints shows the indifference he had to them. He didn't investigate. SADF ¶ 31. He didn't take them seriously. Instead, he just called them rumors in spite of the experiences of many girls and never took any further action. Moreover, even if Defendant Gomez had taken some actions at some point, as he learned that his efforts had not resulted in protection of female students at Everitt, his failure to take other, additional actions amounts to deliberate indifference.

Lastly, Defendants' argument that Titty Touch Tuesday and Slap Ass Friday were simply "games" and "juvenile behavior" show the lack of seriousness with which Defendants addressed this disgusting culture in their school. Boys grabbing girls' breasts in the hallways and slapping girls' butts is not a game. It certainly wasn't for many female students. SADF ¶ 38. This is sexual assault. Whether some children may not have meant for it to be assault is beyond the point. Defendants were entrusted with twelve and thirteen and fourteen year olds - <u>children</u> in the formative years of their lives. They should have received guidance, education on proper personal boundaries - and what is and is not sexual harassment. The school failed to provide such counsel for ten years and even now, seeks to diminish the seriousness of their failures. Their argument makes clear that Defendants were indifferent to the very real experiences of hundreds of female students under their watch.

### C.  **A Reasonable Jury Could Find In Favor of STC on Claims 2 & 3**

Plaintiff has brought three Title IX claims: the first for her assaults under Titty Touch Tuesday and Slap Ass Friday as discussed above (Claim 1), the second for being denied

educational opportunities at school on account of her sex (Claim 2), and the third for being subjected to additional sexual harassment by her assailants' friends during eighth grade (Claim 3).

### 1. *STC was Denied Educational Opportunities on Account of Her Sex*

Plaintiff does not base her second claim on Defendant Carlin's conduct in obstructing the police investigation into her assault or in the time it took Defendant Gomez to issue his Title IX letter. STC bases her deprivation of access to educational benefits on her being moved from the advanced and honors classes so that her attackers wouldn't be inconvenienced. SADF ¶¶ 50-58. STC was forced out of honors classes, was forced to take her science class online in the counselor's office and ultimately, was forced to spend a significant portion of her eighth grade year in the counselors' office. SADF ¶¶ 60, 72. While it is certainly true that students do not have the right to make a particular remedial demand, that is not what is at issue here. Remedial demands as contemplated in *Escue*, relying upon *Theno* and *Adler*, speak to whether the remedial and preventive action was "reasonably calculated to end the harassment." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 676, (10th Cir. 1998); *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F. Supp. 2d 952, 976, (D. Kan. 2005); *Escue v. N. Okla. College*, 450 F.3d 1146, 1154, (10th Cir. 2006). Here, Plaintiff isn't didn't demand a certain action to end her harassment - she demanded access to honors classes. She was denied such access so as to allow her assailants' schedules to not be disrupted. A reasonable jury could conclude that on these facts that STC was denied an educational opportunity on the basis of her gender.

### 2. *Everitt was Deliberately Indifferent to STC's Sexual Harassment by her Assailants' Friends*

STC's third claim arises from the school's failure to take any action to protect her from sexual harassment by her assailants' friends. STC was repeatedly called a whore and a slut for coming forward with her allegations of sexual assault. SADF ¶¶ 67-68. STC gave the school the names of her harassers. SADF ¶¶ 68-70. Gomez had a meeting with these boys and issued a warning. SADF ¶ 70. However, this warning had no effect and the boys continued to harass STC. SADF ¶ 71. STC continued to complain about this harassment, but no further action was taken. *Id*. This led STC to withdraw from class and spend more of her time in the counselor's office. SADF ¶ 72. It is the failure of Gomez and the school to continue to address these concerns that forms the basis of STC's third claim.

Defendants instead base their entire argument on STC's inability to identify her assailants. However, the record is clear that STC did. SADF ¶¶ 68-69. Gomez spoke with eight boys the day STC met with MacDonald. Gomez wrote STC's mother an email where he stated that he "took action with those that STC states are involved." The record is clear that the school was provided the names of her assailants. The record is clear that there is evidence which supports each element of a student-on-student sexual harassment claim under the *Davis* standard: 1) Mr. Gomez knew about STC's harassment and continued harassment in retalation for her sexual assault reporting, SADF ¶¶ 66-68; 2) STC continued to complain about her continued sexual harassment by these boys, SADF ¶ 71; and this harassment caused STC to be deprived of educational opportunities. SADF ¶¶ 72-73.

## II. **Emotional Distress Damages Under Title IX**

Plaintiff concedes that the Supreme Court's decision in *Cummings* protects school districts from damages for emotional distress they cause in claims brought under Title IX.

14

**III.     Municipal Liability Under Equal Protection**

Plaintiff concedes that neither Defendant was a final policymaker under Colorado statute and that accordingly, Plaintiff's claims against Jefferson County School District R-1 under 1983 for violation of Equal Protection should be dismissed.

**IV.     Equal Protection**

*A.  There is a Dispute of Fact as to Whether STC Was Discriminated on Account of Her Gender*

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *see also Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) ("In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them."). Thus, to establish an equal protection violation, a Plaintiff must allege facts that the Defendant treated them differently than other similarly situated prisoners. Individuals are "similarly situated" only if they are alike "in all relevant respects." *Coal. for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008) (quotation marks omitted). Moreover, to state a race-based equal protection claim, "[a] plaintiff must sufficiently allege that defendants were motivated by racial animus." *Phelps v. Wichita Eagle–Beacon*, 886 F.2d 1262, 1269 (10th Cir. 1989).

As this Court has already determined STC and her attackers were "similarly situated" individuals for the purpose of a Gender Discrimination claim. ECF No. 52. The record is also

clear that STC was denied access to honors classes and eventually made to take her science course via a virtual academy while her attackers were allowed to remain in the honors class. SADF ¶¶ 53-60. And the facts support that Defendant Gomez was the school officer who determined that STC would be moved. *Id*. Indeed, Defendants make no argument relating to STC's Fourth claim other than that they "arranged - at the family's request - to have STC's schedule changed." However, that is not what happened. STC's schedule was changed because she was faced with the false choice of class with her attackers or a different remedial class. SADF ¶¶ 59. But the crux of this claim is that Defendants intentionally placed the interests of the male students, the ones who had assaulted STC, above hers and that this was done to protect the boys while making the female victim of a sexual assault make all of the sacrafices. That is a clear violation of the Equal Protection.

### B. There is a Dispute of Fact as to Whether Defendants Engaged in Deliberate Indifference to Sexual Harassment

A governmental official may be held liable under section 1983 upon a showing of deliberate indifference to known sexual harassment. Although conduct by a state actor is required in order to support a claim under section 1983 and the primary conduct in this case is that of a student, the 10th Circuit has found the possibility of state action where "a supervisor or employer participates in or *consciously acquiesces* in sexual harassment by an outside third party or by co-workers." *Noland v. McAdoo*, 39 F.3d 269, 271 (10th Cir. 1994) *see also Murrell v. School Dist. No. 1*, 186 F.3d 1238, 1250, (10th Cir. 1999). Here, Plaintiff has already established the factual underpinnings of this claim in her argument relating to Claims 1 and 3 in Section I above.

Given how pervasive Titty Touch Tuesday and Slap Ass Friday were in Everitt Middle School, a reasonable jury could conclude that both Defendant Carlin and Defendant Gomez had knowledge of this harassment and acquiesced to it. Moreover, Defendant Gomez has admitted that he was aware of Titty Touch Tuesday and Slap Ass Friday and there is evidence that students complained to him about it. SADF ¶ 29. Lastly, Defendants specifically told students that they should report any issues of sexual harassment to "any trusted adult." SADF ¶ 32. Students did report Titty Touch Tuesday and Slap Ass Friday to teachers who were their trusted adults. SADF ¶ 34. Defendants instituted a process by which they were put on notice of this culture. It's reasonable to infer that teachers reported these complaints about Titty Touch Tuesday and Slap Ass Friday to Defendants as part of their process.

Additionally, the record supports a dispute of fact as to whether Defendant Gomez knew about STC's continued sexual harassment in retalation for her complaints against S.S. and R.S. SADF ¶ 67. The record also supports a finding that Defendant Gomez was indifferent to STC's continued complaints of sexual harassment. SADF ¶ 71. Accordingly, Plaintiff has raised sufficient facts to establish a dispute of fact as to her fifth claim for Deliberate Indifference to Sexual Harassment under the Equal Protection clause.

### V. **Defendants Failed to Contest Individual Claims for Failure to Train**

Defendants only raise an argument as to the School District's Failure to Train claim under Plaintiff's Seventh Claim for Relief. However, Plaintiff brought failure to train claims against Defendants Jeff Gomez and Tim Carlin as well. Accordingly, Plaintiff will only address Defendants' argument as to the failure of the School District to train as Defendants Gomez and Carlin have failed to raise any issue as to claims of failure to train brought against them. The

17

10th Circuit recognizes Failure to Train claims against individuals under § 1983. *See Dodds v. Richardson,* 614 F.3d 1185 (10th Cir. 2010). Defendants have produced not a single email prior to Plaintiff's harassment and assault realting to responses to sexual harassment, no weekly meeting agenda, no documents or communications on assemblies on responding to Titty Touch Tuesday or Slap Ass Friday, nor any other materials which relate to the training of teachers on how to respond to sexual harassment and assault and in particular, how to respond to the culture of Titty Touch Tuesday and Slap Ass Friday. SADF ¶¶ 36. Defendants have cited only to having parents review handbooks - not training on how to address and stop the culture of harassment which was endemic at Everitt Middle School. A culture where students are assaulted in the hallways for nearly a decade while teachers watch without intervening is evidence of a failure by individual Defendants to train such teachers on how to respond to this troubling culture. SADF ¶¶ 34-38. Defendants were aware of Titty Touch Tuesday and the failure to train their teachers to appropriately respond constitutes deliberate indifference to the constitutional rights of female students to be free from sexual harassment. If teachers had been properly trained on how to respond to Titty Touch Tuesday and Slap Ass Friday, they would have been equipped to stop such sexual assaults. Accordingly, there is an issue of fact as to Defendants' individual liability for failure to train the teachers they supervised.

Plaintiff concedes that her claim against the Jefferson County School District R-1 for failure to state a claim should be dismissed.

### VI. Defendants Are Not Entitled to Qualified Immunity

"In an action under section 1983, individual defendants are entitled to qualified immunity unless it is demonstrated that their alleged conduct violated clearly established constitutional

rights of which a reasonable person in their positions would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). In order for the law to be clearly established, "there must be a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). In [the 10th Circuit] circuit, it has been clearly established since…1989 in *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989), that "sexual harassment . . . can violate the Fourteenth Amendment right to equal protection of the laws." *See Woodward v. City of Worland, 977 F.2d 1392*, 1398 (10th Cir. 1992). Moreover, it has been clearly established since at least 1992 that a person who exercises the state's supervisory authority may be held liable for consciously acquiescing in sexually harassing conduct by a non-state actor over whom the state actor has authority. *Id.* at 1401." *Murrell v. School Dist. No. 1*, 186 F.3d 1238, 1251, (10th Cir. 1999).

In *Murrell*, the 10th Circuit held that the to to be free from a failure to remedy sustained sexual harassment and assault was clearly established under the Equal Protection Clause. Accordingly, Plaitntiff's Fifth Claim - to be free from deliberate indifference to known sexual harassment, was clearly established in 2017. Accordingly, Defendants' argument as to qualified immunity under Equal Protection should be denied.

## **CONCLUSION**

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendants' Motion for Summary Judgment.

Respectfully submitted this 20th day of October 2023.

s/ Edward Milo Schwab
Edward Milo Schwab, #47897
Ascend Counsel, LLC
2401 S. Downing Street
Denver, CO 80210
(303) 888-4407
milo@ascendcounsel.co

ATTORNEY FOR PLAINTIFF